■ In the Matter of ANTARENNI INDUSTRIES, INC., et al., Petitioners, v. STATE HUMAN RIGHTS APPEAL BOARD, Respondent.— Proceeding pursuant to section 298 of the Executive Law to review an order of the State Human Rights Appeal Board, dated June 30, 1971, which affirmed an order of the State Division of Human Rights, dated February 11, 1971, finding, *inter alia,* that on January 23, 1970 petitioners had discharged the complainant, Walter Craig, because of his race and color, in violation of the Human Rights Law (Executive Law, art. 15), and directing his reinstatement, with back pay. Petition granted and both orders annulled, on the law, without costs. Walter Craig, a Negro, filed a complaint on February 6, 1970 with the State Division of Human Rights, charging petitioners with an unlawful discriminatory practice in that on January 23, 1970 they discharged him because of his race and color, in violation of the Human Rights Law. A hearing was held on April 24, 1970. The only proof adduced by the complainant to substantiate his charges consisted of his own testimony. Essentially, he testified that he was a black high school graduate, had been hired by the petitioner corporaton in 1965 as a shipping clerk and had been so employed continually thereafter, except for brief intervals, until January 23, 1970 when he was discharged. He briefly left his employment in January, 1969 because his request for increased compensation had been denied, but was rehired in February, 1969 with an increase in salary, staff status and additional fringe benefits. He charged that following the hiring of one Lane in the shipping department in September, 1968 frequent disputes arose between them. Regarding the discharge, the complainant testified: " I felt I have been discriminated against because out of all the supervisors and the number of employees that Antarenni employs, I was the only black person on the staff. Everyone else is white  *  *  *  I felt like that I had been discriminated. I felt hurt because I had been with the company a long time." The countervailing evidence adduced by petitioners consisted of the testimony of the president and vice-president of the corporation, the plant manager, Lane, the supervisor of the shipping department, and one Williams, an employee who assumed the complainant's position after his discharge. In substance, petitioners' proof, both testimonial and documentary, disclosed the following: the corporate petitioner employed approximately 220 persons, 90% of whom were of a minority group, either black or Puerto Rican. They were hired primarily through two agencies, the Puerto Rican Commonwealth and the New York State Employment Agency. The corporation also had a contract with the Manpower Administration of the United States Government to employ the "hard core" unemployed. The employee Lane was hired as a supervisor in the shipping department in September, 1968 in preference to the complainant, who had seniority, because of the latter's poor record for absenteeism and tardiness. In this regard, petitioners' proof revealed that one West, now the plant manager, had previously been in charge of the shipping department, with the complainant as his helper. At that time, as the volume of business expanded, West suggested that the corporation hire a traffic specialist. The complainant was not even then deemed acceptable for the new position because he was not considered dependable in

view of his absenteeism and tardiness. Moreover, the new position required the services of a person with knowledge of rates and relevant technical information. In response to an advertisement, Lane applied for the position, was found qualified and was hired. After Lane assumed charge of the shipping department, frequent disputes arose between the complainant and Lane, presumably stemming from the complainant's conviction that he was the one entitled to the new position, not Lane. Petitioners' witness Williams, a black, testified he had been employed by the corporation for approximately two years. He had worked closely with the complainant and, in his opinion, the complainant had been treated as fairly as if he were a Caucasian. He expressed the view that he did not think the complainant was discharged because he was black. He was aware of the complainant's absenteeism and tardiness. In our opinion the record, considered as a whole, completely negates the finding that the complainant was discharged because of racial or color discrimination. The record is completely devoid of proof establishing that he was discharged solely because of his race or color. He failed to sustain his burden in this respect. (*Matter of Nescott of East Islip* v. *State Division of Human Rights*, 27 N Y 2d 787; cf. *Matter of State Division of Human Rights* v. *Bystricky*, 36 A D 2d 278, 280; *Matter of New York Tel. Co.* v. *Wethers*, 36 A D 2d 541.) Quite to the contrary, it is clear that his absenteeism and tardiness were the basis of the employer's determination to discharge him. Shapiro, Acting P. J., Gulotta, Christ and Brennan, JJ., concur.