553 F.2d 265
 14 Fair Empl.Prac.Cas. 1034,
13 Empl. Prac. Dec. P 11,616
Blanche MITCHELL, Appellant,
v.
NATIONAL BROADCASTING COMPANY and S. Theodore Nygreen,
Manager of Information Services, National
Broadcasting Company, Appellees.
 No. 442, Docket 76-7376.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 21, 1977.
Decided April 6, 1977.
 
 1
 Jack Greenberg, O. Peter Sherwood, Ronald L. Ellis, New York City, for appellant.
 
 
 2
 Howard L. Ganz, Sara S. Portnoy, New York City, of counsel, Proskauer, Rose, Goetz & Mendelsohn, New York City, for appellees.
 
 
 3
 Abner W. Sibal, Joseph T. Eddins, Jr., Beatrice Rosenberg, Marleigh Dover Lang, E. E. O. C., Washington, D. C., as amicus curiae.
 
 
 4
 Before LUMBARD and FEINBERG, Circuit Judges, and MISHLER, District Judge.*
 
 MISHLER, District Judge:
 
 5
 This is an appeal from an order of the District Court for the Southern District of New York dismissing the plaintiff-appellant's civil rights action, 42 U.S.C. § 1981, and granting summary judgment in favor of the defendants-appellees. The case raises a significant question, apparently one of first impression, as to whether a state administrative determination, upheld in the state courts, is res judicata of a subsequent federal civil rights action.
 
 
 6
 The appellant, a black woman, is a former employee of appellee National Broadcasting Company ("NBC"). She began her employment with NBC on March 13, 1972, as an Operations Administrator in the Central Records Department. Although it was originally hoped by NBC that Ms. Mitchell would be promoted to a higher position, on October 17, 1973, allegedly because of her poor work performance and uncooperative attitude, the appellant was placed on probation for 30 days. On November 19, 1973, NBC, who claims that Ms. Mitchell's attitude failed to improve during the probationary period, formally dismissed her.
 
 
 7
 On December 3, 1973, the appellant filed a complaint with the New York State Division of Human Rights ("State Division"),[1] charging NBC, S. Theodore Nygreen, the appellant's supervisor, and other NBC employees with discriminatory practices.[2] Pursuant to § 297(2) of the New York Human Rights Law, N.Y. Exec. Law § 297(2) (McKinney 1972), the State Division conducted an investigation to determine whether it had jurisdiction and, if so, whether there was probable cause to believe the defendants had engaged in discriminatory practices. In addition, as part of its conciliatory function, the State Division encouraged the parties to work out a settlement, although without success in this case. The investigation conducted by the State Division, according to appellant, consisted of two conferences, held in December 1973 and January 1974, with two different officials of the State Division. At both conferences, the appellant, NBC's attorneys, and the agency officials engaged in "informal discussions," and NBC submitted documents in the form of office correspondence to support its position. On February 11, 1974, Courtney Brown, the Regional Director of the Division of Human Rights, who had presided at one of the conferences, filed an opinion dismissing the complaint on the ground of lack of probable cause.[3]
 
 
 8
 On February 12, 1974, pursuant to § 297-a of the Human Rights Law, N.Y. Exec. Law § 297-a (McKinney 1972 and Supp.1976), the appellant appealed to the State Human Rights Appeal Board ("Appeal Board").[4] Two weeks later, on February 27, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which did not act until nearly a year later. On July 22, 1974, the Appeal Board split 2-2, resulting in an automatic affirmance of the dismissal of the complaint. The dissenting members would have remanded to the State Division for "further investigation." On August 26, 1974, the appellant, now represented by the Legal Aid Society, petitioned the Appellate Division of New York State Supreme Court, pursuant to § 298 of the Human Rights Law, N.Y. Exec. Law § 298 (McKinney 1972) and article 78 of the New York Civil Practice Law and Rules, N.Y.C.P.L.R. § 7801 et seq. (McKinney 1972 and Supp.1976), for a judgment setting aside the Appeal Board's order and, inter alia, compelling NBC to re-instate her and award back pay. On November 7, 1974, the Appellate Division unanimously affirmed the ruling of the Appeal Board. The appellant did not seek to appeal to the New York Court of Appeals. Several months later, on February 14, 1975, the EEOC issued a finding of no probable cause with respect to appellant's charges. Although appellant received a notice of right to sue letter from the EEOC, a Title VII proceeding was not begun in the federal courts.
 
 
 9
 Instead, on November 20, 1975, appellant, now represented by a private law firm, commenced an action under 42 U.S.C. § 1981 in the Southern District of New York. The complaint alleged that the appellant's dismissal had been racially motivated, and sought punitive damages and injunctive relief. Judge Metzner dismissed the complaint on the ground that the state administrative and judicial proceedings "had a res judicata effect barring later action under Section 1981." We affirm.
 
 
 10
 The appellant raises, essentially, two different arguments against giving the state proceedings res judicata effect. First, it is argued that substantial policy reasons, such as the importance of agency conciliation efforts in civil rights litigation and the undesirability of allowing state proceedings encouraged in Title VII actions to preempt claims brought under the federal civil rights statute, militate against the application of res judicata in this case. Second, even if state proceedings can bar a subsequent § 1981 action, res judicata should not apply since the state proceedings in this case were so inadequate as to deprive appellant of a "full and fair opportunity to litigate her claim." The lack of sworn testimony at the agency's conferences, the failure to subpoena witnesses, the absence of cross-examination, and the fact that appellant was not represented by counsel during the agency proceedings, appellant argues, are reasons why it is inappropriate to give res judicata effect to the state proceedings.
 
 DISCUSSION
 
 11
 Res judicata is a salutary doctrine, judicial in origin, that reflects "considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations." Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). The general principle is that
 
 
 12
 a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect to all matters properly put in issue and actually determined by them.
 
 
 13
 Southern Pacific Railroad Co. v. United States, 168 U.S. 1, 48-49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897). See Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 578-79, 94 S.Ct. 806, 811-12, 39 L.Ed.2d 9 (1974). In this case, since the parties are the same in both the state and federal proceedings, the threshold question is whether "the right, question or fact" determined in the state administrative and judicial proceedings is the same as that raised by the § 1981 claim.
 
 
 14
 Furthermore, the prior state determination involved, in part, a proceeding before an administrative agency. Res judicata effect may attach to determinations of administrative agencies in appropriate circumstances. United States v. Utah Construction & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). See Industrial Comm'n of Wisconsin v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947); Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943). Among the factors that bear on a determination of whether a state administrative proceeding is res judicata of a subsequent judicial litigation are
 
 
 15
 (1) the effect which such determinations are accorded by the courts of the jurisdiction within which they are made; (2) the type of hearing which is held and the procedures which are followed by the agency; and (3) the intention of the administrative body and the expectations of the parties before it on the question of finality. See Restatement, Judgments § 4 (1942); ALI, Restatement 2d, Conflicts of Laws § 92, and Reporter's Note, at 341 (P.O.D., Pt. I 1967).
 
 
 16
 Taylor v. New York City Transit Authority, 309 F.Supp. 785, 791 (E.D.N.Y.), aff'd, 433 F.2d 665 (2d Cir. 1970).
 
 
 17
 Finally, res judicata is a flexible doctrine. A mechanical application of the rule in this case is particularly undesirable in light of the policy considerations raised by the appellant. See Tipler v. E. I. duPont de Nemours and Co., 443 F.2d 125, 128 (6th Cir. 1971); 1B Moore's Federal Practice P 0.405(12), at 791 (1974); 2 K. Davis, Administrative Law Treatise § 18.02-.03, at 609-14 (1970 Supp.). The implications of barring a civil rights claim on res judicata grounds deserve careful consideration.
 
 SIMILARITY OF ISSUE
 
 18
 Section 1981 of Title 42[5] is the present codification of § 16 of the Civil Rights Act of 1870, 16 Stat. 144. By its terms, the statute forbids racial discrimination in the making and enforcement of contracts. Recently, the Supreme Court, joining the federal courts of appeals, held that " § 1981 affords a federal remedy against discrimination in private employment on the basis of race." Johnson v. Railway Express Agency, 421 U.S. 454, 459-60, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). See, e. g., Gresham v. Chambers,501 F.2d 687 (2d Cir. 1974); Long v. Ford Motor Co., 496 F.2d 500 (6th Cir. 1974); Brown v. Gaston County Dyeing Machine Co., 457 F.2d 1377 (4th Cir.), cert. denied, 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972); Waters v. Wisconsin Steel Works of International Harvester Co., 427 F.2d 476 (7th Cir.), cert. denied, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970). Thus, the issue presented by the appellant's § 1981 claim is whether NBC discharged her for reasons involving race, and not for other reasons. See Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970), cert. denied, 401 U.S. 948, 91 S.Ct. 935, 28 L.Ed.2d 231 (1971).
 
 
 19
 The relevant provision of the New York State Human Rights Law provides:
 
 
 20
 1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.
 
 
 21
 N.Y. Exec. Law § 296(1)(a) (McKinney Supp.1976). Under this provision, the appellant was required to demonstrate that she "was discharged because of racial or color discrimination," and not for other reasons, such as absenteeism and tardiness. Antarenni Industries, Inc. v. State Human Rights Appeal Board, 38 A.D.2d 948, 949, 331 N.Y.S.2d 479, 481 (2d Dep't.1972). Accord, Matter of Nescott of East Islip, Inc. v. State Division of Human Rights, 27 N.Y.2d 787, 315 N.Y.S.2d 851, 264 N.E.2d 345 (1970); Sperry Rand v. State Human Rights Appeal Board, 46 A.D.2d 678, 360 N.Y.S.2d 57 (2d Dep't.1974). The protection against discrimination afforded by § 296 appears to be at least as broad as that afforded by the federal constitution and civil rights statutes. Indeed, the New York courts consistently affirm that acts not otherwise in violation of the federal Equal Protection Clause may nonetheless contravene the State Human Rights Law. E.g., Union Free School District No. 6, Towns of Islip and Smithtown v. State Human Rights Appeal Board, 35 N.Y.2d 371, 377-78, 362 N.Y.S.2d 139, 143, 320 N.E.2d 859 (1974); Board of Ed. of Union Free School District No. 2, Town of North Hempstead v. New York State Division of Human Rights, 42 A.D.2d 49, 52, 345 N.Y.S.2d 93, 97 (2d Dep't.1973). Compare Brooklyn Union Gas Co. v. New York State Human Rights Appeal Board, 41 N.Y.2d 84, 390 N.Y.S.2d 884, 359 N.E.2d 393 (1976) with General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) (Title VII); and Division of Human Rights v. Kilian Manufacturing Corp., 35 N.Y.2d 201, 360 N.Y.S.2d 603, 318 N.E.2d 770 (1974) with Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (Section 1983). There is little doubt that the issue raised by the § 1981 claim whether Ms. Mitchell was discharged because of her race is identical to the question first presented to the State Human Rights Division.
 
 
 22
 Inquiry cannot end at this point, of course, because central to the application of res judicata is a determination that the issue presented to the State Division was fully and fairly adjudicated on its legal or factual merits. See United States v. Utah Construction & Mining Co., supra. Here, it is necessary to examine the procedures afforded the appellant by the State Division.
 
 
 23
 An individual who wishes to pursue a claim of discrimination in the State Division may file a verified complaint with the agency, naming the persons alleged to have committed the discriminatory act and providing "the particulars thereof." N.Y. Exec. Law § 297(1) (McKinney 1972). Within fifteen days after the complaint is filed, the agency must determine whether it has jurisdiction and, if so, whether there is "probable cause" to believe that the person named in the complaint committed unlawful discriminatory acts. If it finds that probable cause does not exist, the complaint is dismissed.[6] N.Y. Exec. Law § 297(2) (McKinney 1972). The State Division, at any time after the complaint is filed, may attempt to eliminate the discriminatory practice by "conference, conciliation and persuasion." N.Y. Exec. Law § 297(3)(a) (McKinney 1972). Even if probable cause is found, the agency must first undertake conciliation efforts, if it has not already done so. If this approach fails, the State Division "is authorized to proceed to a hearing on the complaint and to take testimony, subpoena witnesses and confer immunity upon witnesses pleading their privilege against self-incrimination." Gaynor v. Rockefeller, 15 N.Y.2d 120, 133, 256 N.Y.S.2d 584, 593, 204 N.E.2d 627, 633 (1965); N.Y. Exec. Law § 297(4) (McKinney 1972).
 
 
 24
 The preliminary review for the purpose of determining probable cause, despite its investigatory and conciliatory aspects, is an adjudicatory process comparable to the treatment given under the Federal Rules of Civil Procedure to a motion for summary judgment or to dismiss for failure to state a claim upon which relief can be granted. See Fed.R.Civ.Proc. 12(b) & 56. Before the State Division may dismiss a complaint of discrimination for lack of probable cause, "it must appear virtually that as a matter of law the complaint lacks merit." Mayo v. Hopeman Lumber & Mfg. Co., 33 A.D.2d 310, 313, 307 N.Y.S.2d 691, 695 (4th Dep't.1970). Accord, e. g., New York State Division of Human Rights v. Board of Education, Olean Public Schools, 46 A.D.2d 483, 363 N.Y.S.2d 370 (4th Dep't.1975); Rodriguez-Abad v. Hurst, 49 A.D.2d 115, 373 N.Y.S.2d 583 (1st Dep't.1975); Tenenbaum v. State Division of Human Rights, 50 A.D.2d 257, 376 N.Y.S.2d 542 (1st Dep't.1975); Pember v. New York State Division of Human Rights, 50 A.D.2d 903, 377 N.Y.S.2d 554 (2d Dep't.1975). Moreover, in making this determination, the State Division must give "full credence . . . to the complainant's version of the events." State Division of Human Rights v. Buffalo Glass Co., 42 A.D.2d 678, 678, 344 N.Y.S.2d 374, 375 (4th Dep't.1973). Accord, State Division of Human Rights v. Xerox Corporation, 49 A.D.2d 21, 370 N.Y.S.2d 962 (4th Dep't.1975), aff'd, 39 N.Y.2d 873, 386 N.Y.S.2d 221, 352 N.E.2d 139 (1976). The adjudication of no probable cause in this case represents a finding that, assuming the allegations of the complaint to be true, nonetheless as a matter of law the discharge of appellant did not amount to a discriminatory act. Had the complaint initially been filed in federal court and subjected to a motion for summary judgment under the Federal Rules of Civil Procedure, the legal standard applied would have been identical.[7] We are satisfied that the procedures and standards for determining the legal sufficiency of the complaint are fair.
 
 
 25
 The fact that the determination at issue was made on the legal merits of the complaint, without a formal evidentiary hearing, is no bar to the application of res judicata principles when the same claim is raised in another forum:
 
 
 26
 (I)t is well settled that a judgment dismissing a complaint on a general demurrer or its modern substitute under the Federal Rules a motion to dismiss for failure to state a claim upon which relief can be granted and without reservation of any issue, is presumed to be upon the merits, unless the contrary appears of record or is stated in the decree, and the judgment has the same effect of res judicata as though rendered after trial, in a subsequent suit on the same claim.
 
 
 27
 1B Moore's Federal Practice P 0.409(1), at 1005 (1974 and 1975 Supp.) (footnotes omitted), and cases cited therein. See Hubicki v. ACF Industries, Inc., 484 F.2d 519, 524 (3d Cir. 1973) (summary judgment is a final judgment on the merits sufficient to raise defense of res judicata in subsequent action between the parties); Glick v. Ballentine Produce, Inc., 397 F.2d 590, 593 (8th Cir. 1968); Rhodes v. Meyer, 334 F.2d 709, 716 (8th Cir.), cert. denied, 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186 (1964); Crawford v. Zeitler, 326 F.2d 119, 121 (6th Cir. 1964). The proverbial "right to a day in court" does not mean the actual presentation of the case in the context of a formal, evidentiary hearing, but rather "the right to be duly cited to appear and to be afforded an opportunity to be heard." Olsen v. Muskegon Piston Ring Co., 117 F.2d 163, 165 (6th Cir.1941), quoted in 1B Moore's Federal Practice P 0.409(1), at 1008 (1974).
 
 
 28
 Significantly, appellant's arguments are directed not so much at the standard recognized by both the State Division and the New York courts as appropriate for determining the existence of probable cause, as at the actual determination in this case. For example, appellant criticizes the investigators' reliance on documentary evidence supplied by the appellees; the investigators' failure to recognize that genuine issues of material fact existed; and the presence of factual errors in the findings made by the State Division. Even if arguendo the State Division's investigators, in determining the legal merit of the claim, failed to resolve disputed facts in favor of appellant and improperly relied on disputed documents supplied by NBC,[8] the state proceedings should still be accorded a res judicata effect. The doctrine of res judicata does not depend on whether the prior judgment was free from error. See Milliken v. Meyer, 311 U.S. 457, 462, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940); Treinies v. Sunshine Mining Co., 308 U.S. 66, 74-78, 60 S.Ct. 44, 49-51, 84 L.Ed. 85 (1939); Fauntleroy v. Lum, 210 U.S. 230, 237, 28 S.Ct. 641, 643, 52 L.Ed. 1039 (1908); Miller v. Meinhard-Commercial Corp.,462 F.2d 358, 361 (5th Cir. 1972); Smith v. Alleghany Corp., 394 F.2d 381, 389 (2d Cir.), cert. denied, 393 U.S. 939, 89 S.Ct. 300, 21 L.Ed.2d 276 (1968). Otherwise, judgments would have no finality and the core rationale of the rule of res judicata repose would cease to exist. See generally 1B Moore's Federal Practice P 0.405(4.-1), at 634-39 (1974). Indeed, if appellant's claims of error were to decide this case, there would no longer be a distinction between direct review of an erroneous judgment and collateral attack. Here, the former was available and used by the appellant.[9] As to the latter, however, unlike the federal habeas corpus statutes, the federal civil rights acts do not provide for collateral review of state court judgments. Federal courts do not sit to review the determinations of state courts. Bricker v. Crane, 468 F.2d 1228, 1231 (1st Cir. 1972), cert. denied, 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (1973).
 
 FINALITY OF THE STATE DETERMINATION
 
 29
 While a determination that probable cause exists is not considered a final adjudication of the merits of the claim, and hence, it is not reviewable, Board of Education, Tuxedo Union Free School District No. 3 v. State Division of Human Rights, 68 Misc.2d 1035, 330 N.Y.S.2d 274 (Sup.Ct. Westchester Cty. 1972); Application of Local 373 Association of Journeymen, 40 Misc.2d 440, 243 N.Y.S.2d 61 (Sup.Ct. Rockland Cty. 1963), a finding that probable cause does not exist and concomitant dismissal of the complaint is subject to review pursuant to the procedures established by the Human Rights Law. See Matter of Jeanpierre v. Arbury, 4 N.Y.2d 238, 173 N.Y.S.2d 597, 149 N.E.2d 882 (1958). A finding of no probable cause may be appealed to the Appeal Board, N.Y. Exec. Law § 297-A (McKinney 1972 and Supp.1976), and, if the Appeal Board affirms, to the Appellate Division of the State Supreme Court and to the Court of Appeals. N.Y. Exec. Law § 298 (McKinney 1972). The decision by the Appellate Division, however, has a distinct consequence:
 
 
 30
 The jurisdiction of the appellate division of the supreme court shall be exclusive and its judgment and order shall be final, subject to review by the court of appeals in the same manner and form and with the same effect as provided for appeals from a judgment in a special proceeding.
 
 
 31
 N.Y. Exec. Law § 298 (McKinney 1972). The finality of the Appellate Division's determination takes on even greater significance in light of § 300 of the Human Rights Law:
 
 
 32
 (A)s to acts declared unlawful by section two hundred ninety-six of this article, the procedure herein provided shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned.
 
 
 33
 N.Y. Exec. Law § 300 (McKinney 1972). While the Human Rights Law is less than specific as to the finality accorded an unreviewed decision of the State Division dismissing a complaint for lack of probable cause, see Ferrell v. American Express Co., 8 F.E.P. Cases 521, 522 (E.D.N.Y. July 15, 1974); N.Y. Exec. Law § 297(9) (McKinney Supp.1976),[10] there is no question that a determination of the Appellate Division affirming such a dismissal operates as an absolute bar to any other action on the same facts in the courts of New York. The appellant, who was represented by counsel on the appeal from the agency ruling, was on notice that the determination of the Appellate Division might foreclose any other action in the state courts. The finality accorded the Appellate Division's determination, and the appellant's pursuit of judicial review despite this consequence, are factors that strongly suggest res judicata applies to this case. See Taylor v. New York City Transit Authority, supra.
 
 
 34
 Beyond its analytical significance, moreover, the finality of the Appellate Division's determination has a distinctly legal consequence. Through 28 U.S.C. § 1738,[11] Congress has imposed on federal courts the obligation to give full faith and credit to judgments entered by state courts of competent jurisdiction. Davis v. Davis,305 U.S. 32, 39-40, 59 S.Ct. 3, 6, 83 L.Ed. 26 (1938); American Surety Co. v. Baldwin, 287 U.S. 156, 166, 53 S.Ct. 98, 101, 77 L.Ed. 231 (1932). The federal court presented with a state court judgment is required to give that judgment the same force and effect as it has in the state in which it was rendered. Hazen Research, Inc. v. Omega Minerals, Inc., 497 F.2d 151, 153 (5th Cir. 1974); Holm v. Shilensky, 388 F.2d 54, 56 (2d Cir. 1968). Ordinarily, this would require an analysis of the res judicata effect of the state court proceedings within that state, involving examination of the local doctrine of res judicata. See Riley v. New York Trust Co., 315 U.S. 343, 349, 62 S.Ct. 608, 612, 86 L.Ed. 885 (1942). But here, at least with respect to the Appellate Division's determination, the state court's determination is res judicata of all other actions as a matter of statutory law. The fact that a federal civil rights action is involved, moreover, is not by itself a valid reason for denying full faith and credit to the state court proceedings. American Mannex Corp. v. Rozands, 462 F.2d 688, 690 (5th Cir.), cert. denied, 409 U.S. 1040, 93 S.Ct. 524, 34 L.Ed.2d 489 (1972). See Brown v. DeLayo, 498 F.2d 1173, 1175 (10th Cir. 1974); Bricker v. Crane, supra at 1231; Phillips v. Shannon, 445 F.2d 460, 462 (7th Cir. 1971); Katz v. State of Connecticut, 433 F.2d 878 (2d Cir. 1970), aff'g, 307 F.Supp. 480 (D.Conn.1969); Porter v. Nossen, 360 F.Supp. 527, 528-29 (M.D.Pa.1973). See also Tang v. Appellate Division of N.Y. Supreme Ct., First Dept., 487 F.2d 138, 142-43 (2d Cir. 1973), cert. denied, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974).
 
 POLICY CONSIDERATIONS
 
 35
 This does not mean, however, that the res judicata effect on New York courts of the Appellate Division's determination automatically binds the federal courts. "Other well-defined federal policies, statutory or constitutional, may compete with those policies underlying section 1738." American Mannex Corp. v. Rozands, supra at 690. Appellant has raised a number of policy objections to giving res judicata effect to the Appellate Division's determination, which, if valid, would prevail over the mandate of § 1738.
 
 
 36
 First, appellant argues that resort to state proceedings will not bar a subsequent federal action under Title VII, see Voutsis v. Union Carbide Corp., 452 F.2d 889 (2d Cir. 1971); Batiste v. Furnco Construction Corp., 503 F.2d 447 (7th Cir. 1974), and that the same policy considerations should be applicable in § 1981 actions. Moreover, appellant contends, Title VII contemplates deferral of a charge of discrimination to the state agency before the complaint is considered by the EEOC. 42 U.S.C. § 2000e-5(c). If a prior state agency determination is res judicata of a § 1981 claim, arguably pursuit of a Title VII remedy may foreclose a § 1981 claim when, in fact, the Congressional history of Title VII "manifests an intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes." Alexander v. Gardner-Denver Co., 415 U.S. 36, 48, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). Indeed, Judge Metzner acknowledged that his ruling might force "a party to make an election between a Title VII proceeding and an action under Section 1981."
 
 
 37
 Assuming arguendo that the policy considerations underlying the treatment of state proceedings in Title VII claims are desirable in a § 1981 context, see Gresham v. Chambers, supra, a claimant can satisfy the rationale of deferral affording the state an opportunity to resolve the grievance[12] without foreclosing a § 1981 claim. Had the appellant brought her § 1981 claim without resorting to judicial review of the state agency's determination, a number of considerations would weigh against barring the federal action on res judicata grounds, including the undesirability of allowing the deferral of a Title VII claim to the state agency to foreclose a § 1981 action and the usefulness of having state administrative agencies attempt conciliation of discrimination claims prior to filing an action in federal court, see Johnson v. Railway Express Agency, Inc., 421 U.S. at 461, 95 S.Ct. at 1720. Once review of a state agency determination is sought in the state courts, however, these considerations disappear.[13] The deferral requirements of Title VII do not contemplate resort to state judicial review and thus, in the circumstances of this case where resort to the Appellate Division is a decisive factor, it cannot be argued that bringing a Title VII claim and undergoing deferral must automatically foreclose the remedies available under § 1981. And, of course, by the time appellant sought review in the Appellate Division, all efforts at conciliation had long been concluded.
 
 
 38
 To the extent that this circuit's exhaustion rule in § 1983 cases is applicable to a § 1981 claim,[14] our holding is consistent with the requirement that, while a plaintiff bringing a civil rights claim need not resort to state judicial remedies, in certain circumstances state administrative remedies may not be bypassed. Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970); Blanton v. State University of New York, 489 F.2d 377 (2d Cir. 1973); Cordova v. Reed, 521 F.2d 621 (2d Cir. 1975). By invoking res judicata when a claimant crosses the line between state agency and state judicial proceedings, we still allow the expertise of the state agency to be applied to the claim of discrimination; a method is still available for resolution of a grievance without resort to the federal courts; and proper deference is paid to the state's own interest in obviating discrimination through its agency process. See Eisen v. Eastman, supra at 567 n.11. At the same time, a plaintiff is not forced into the Catch-22 choice of complying with exhaustion requirements and barring a federal claim or bringing a federal claim and suffering dismissal for failure to exhaust. See James v. Board of Education, 461 F.2d 566, 571 (2d Cir.), cert. denied, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 491 (1972). Res judicata attached when plaintiff chose to pursue her claim in the state courts, and not before.
 
 
 39
 The distinction we draw for res judicata purposes between state administrative and state judicial proceedings is particularly valid in this case, where the legal merit of the complaint was resolved by the state agency. It is reasonable to question whether such a legal determination, when made only by administrative officials, should bar consideration of the complaint by a federal court. But in this case, five judges of New York State's second highest court reviewed the agency's legal finding. Appellant could have sought further review in the New York Court of Appeals. There is no reason to believe that the New York courts are less capable than federal judges of resolving the legal sufficiency of a complaint or that the state courts are less sensitive to claims under the State Human Rights Law involving employment discrimination that may also be cognizable under § 1981. Cf. Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 3051 n.35, 34 L.Ed.2d 491 (1976) (state courts provide forums as fair and as competent as federal courts for adjudication of fourth amendment claims).
 
 
 40
 In sum, the decision of the appellant to pursue her administrative remedy to a final judicial determination, which was not imposed by the deferral provision of Title VII or any conceivable exhaustion doctrine applicable to a § 1981 claim, carried the consequence that a federal court would be bound by the state court judgment. In the absence of countervailing policy considerations, this conclusion is required by the principles underlying the doctrine of res judicata:
 
 
 41
 (T)he interests of judicial husbandry, the policy of comity between federal and state courts, and the equity of protecting opposing parties . . . from vexatious duplicative litigation.
 
 
 42
 Thistlethwaite v. City of New York, 362 F.Supp. 88, 92 (S.D.N.Y.1973), aff'd, 497 F.2d 339 (2d Cir.), cert. denied, 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974). Here, because we are dealing with a state court determination that is accorded complete finality by New York courts, the state court judgment must also be honored as a matter of full faith and credit.
 
 
 43
 Affirmed.
 
 FEINBERG, Circuit Judge (dissenting):
 
 44
 The issue in this case is whether the doctrine of res judicata bars plaintiff Blanche Mitchell's action in a federal district court under 42 U.S.C. § 1981 against her employer, National Broadcasting Company, and one of its managers. The majority holds that plaintiff is barred because she submitted her complaint of racial discrimination to a state fair employment agency and then sought judicial review in the state court of the agency's unfavorable determination. I submit that application of res judicata here is neither required nor desirable, and I therefore dissent.
 
 
 45
 In keeping with the desire to give the national policy against racial discrimination the "highest priority," Newman v. Piggie Park Enterprises, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), Congress has "long evinced a general intent to accord parallel or overlapping remedies against discrimination." Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). The victim of racial discrimination may be able to sue in the federal courts under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as plaintiff has done here, or under the Civil Rights Act of 1871, 42 U.S.C. § 1983, or under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. The victim may also file charges with state administrative agencies, such as the New York State Division of Human Rights, or with the federal Equal Employment Opportunity Commission (EEOC); see 42 U.S.C. §§ 2000e-5(b), (c). "And in general, submission of a claim to one forum does not preclude a later submission to another" because of the "congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes." Gardner-Denver, supra, 415 U.S. at 47-48, 94 S.Ct. at 1019.
 
 
 46
 Thus, resort to a state administrative proceeding will not bar a subsequent federal action either under Title VII, see Voutsis v. Union Carbide Corp., 452 F.2d 889 (2d Cir. 1971), cert. denied, 406 U.S. 918, 92 S.Ct. 1768, 32 L.Ed.2d 117 (1972); Batiste v. Furnco Construction Corp., 503 F.2d 447 (7th Cir. 1973), cert. denied, 420 U.S. 928, 95 S.Ct. 1127, 43 L.Ed.2d 399 (1975), or under § 1981. See Johnson v. Railway Express Agency, 421 U.S. 454, 465, 95 S.Ct. 1716, 1723, 44 L.Ed.2d 295 (1975) (federal court may "stay (§ 1981) proceedings until the administrative efforts at conciliation and voluntary compliance have been completed"). See also Wageed v. Schenuit Industries, Inc., 406 F.Supp. 217 (D.Md.1975); Hollander v. Sears, Roebuck & Co., 392 F.Supp. 90 (D.Conn.1975). The majority opinion accepts this position, but holds that the Appellate Division review of the administrative decision here bars plaintiff under 28 U.S.C. § 1738, because the state court's judgment has res judicata effect under New York law.[1]
 
 
 47
 Assuming arguendo that this appraisal of New York law is correct, it does not end our inquiry. My colleagues recognize that strong federal policies can override the mandate of 28 U.S.C. § 1738 that a state court judgment be given the same effect in the federal courts that it would have in the state courts in which it was rendered. Such a strong, countervailing federal policy is involved in this case. With respect to employment discrimination, Congress has shown a clear intent to provide injured plaintiffs with a federal fact-finding forum, and several courts, in factual patterns closely analogous to this case, have already held that this intent supersedes the requirement of § 1738. See Crouch v. United Press International, 74 Civ. 296 (S.D.N.Y. Feb. 28, 1977); Benneci v. Department of Labor, New York State Division of Employment, 388 F.Supp. 1080 (S.D.N.Y.1975); Young v. South Side Packing Co., 369 F.Supp. 59 (E.D.Wisc.1973). See also Batiste, supra, 503 F.2d at 450; Wageed, supra, 406 F.Supp. at 220-21. And I believe that that conclusion is particularly justified in this case in light of the kind of administrative hearing that plaintiff received and the limited scope of review that applied to the state court's examination of that hearing. Thus, even though the distinction between a state judicial and a state administrative determination, relied on by the majority, is important,[2] it should not be controlling in this case.
 
 
 48
 In analyzing the application of res judicata here, it is helpful to focus first on the status of administrative rulings in employment discrimination cases under Title VII. If the EEOC or the state human rights agency decides that there is no probable cause for a finding of discrimination, that finding would not prevent plaintiff from presenting a Title VII claim in a federal district court and receiving a de novo review of his claim in that court. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 799, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); see also Ferrell v. American Express Co., 8 F.E.P. Cases 521 (E.D.N.Y. July 15, 1974). As noted in Ferrell, this ultimate resort to a federal forum was provided because "Congress and the courts have recognized that state anti-discrimination agencies are frequently inadequately staffed and budgeted" and because "federal rights are best adjudicated in federal forums." 8 F.E.P. Cases at 523 (citations omitted). See also Voutsis, supra, 452 F.2d at 894 (state proceedings may be "hampered by inadequate legislation, inadequate procedures, or an inadequate budget"). According to the district judge in this case, however, these policy considerations apply only to Title VII actions, and "the question of estoppel by state proceedings (with respect to § 1981) must be examined largely without reference to the Title VII procedures." Mitchell v. National Broadcasting Co., 418 F.Supp. 462, 463 (S.D.N.Y.1976). The majority opinion, on the other hand, assumes "arguendo " that the policy considerations overlap. Clearly, the majority's assumption is correct. As stated in Johnson v. Railway Express, supra, the procedures of § 1981 and Title VII " 'augment each other and are not mutually exclusive.' " 421 U.S. at 459, 95 S.Ct. at 1719, quoting from H.R. Rep. No. 92-238, p. 19 (1971). This mutuality means that the administrative proceedings that are required, but not binding, in the context of Title VII should not become binding, although not required, in the context of § 1981. Such a convoluted interpretation of the interaction between Title VII and § 1981 would lead directly to the sort of "Catch-22 choice" described by the majority opinion, supra, at 276. In short, coherent interpretation of the two statutes requires that the same policy considerations apply to both with respect to the full scale federal review of agency decisions on employment discrimination. Cf. Bowers v. Campbell, 505 F.2d 1155 (9th Cir. 1974).
 
 
 49
 It is against this background that the state court review in this case must be judged. Before the New York State Division of Human Rights and again before the State Human Rights Appeal Board, Mitchell was not represented by counsel, and according to her, the agency investigation was based solely on the documents provided by NBC. On her appeal to the Appellate Division of the New York State Supreme Court, the court's scope of review was governed by Article 78 of the New York C.P.L.R.[3] and section 298 of the New York Human Rights Law.[4] Both provisions contemplate quite limited review based on the sufficiency of the evidence compiled in the administrative proceeding. See Mize v. State Division of Human Rights, 33 N.Y.2d 53, 57, 349 N.Y.S.2d 364, 367-68, 304 N.E.2d 231, 233 (1973). Thus, the state procedures in this case clearly did not provide the plaintiff with the same protections that would be available in the federal court. The state court did not, and could not under the applicable standard of review,[5] conduct a de novo inquiry into the merits of plaintiff's claim. To give the state judgment res judicata effect with respect to the merits of the state agency's determination in this context would effectively overturn the congressional judgment that administrative decisions in the field of employment discrimination should be subjected to intensive scrutiny in the federal courts. See Benneci, supra, 388 F.Supp. at 1082 (holding that res judicata does not apply to a New York state court's affirmance under section 298 of the State Division's and Appeal Board's determination of no unlawful discriminatory practices); Crouch, supra, (same holding with respect to an affirmance under Article 78). See also South Side Packing Co., supra.[6]
 
 
 50
 The majority opinion stresses that, as a matter of comity, the judgment of the state court on the sufficiency of plaintiff Mitchell's claim should be given preclusive effect. The question before the district court, however, was not whether the state court's conclusion on the sufficiency of the evidence before the administrative agency was correct, but whether, as a factual matter, plaintiff was discriminated against and whether federal law provides her with the possibility of de novo review of that question. See Benneci, supra, 388 F.Supp. at 1082. This is not a case where the state court made its own factual inquiry into the merits. Instead, plaintiff contests the findings of an informal agency investigation,[7] and "(t)he integrity of the state court does not depend on the acceptability of the facts found outside the judicial process." McCormack, Federalism and Section 1983: Limitations on Judicial Enforcement of Constitutional Claims, Part II, 60 Va.L.Rev. 250, 300 (1974).
 
 
 51
 Finally, defendants point out that four separate entities the two New York state agencies, the New York state court, and the EEOC have determined that Mitchell's claim is completely meritless. Defendants argue that application of res judicata here could prevent this seemingly endless inquiry into a frivolous claim. The argument is a troublesome one. It may be that there is no basis for Mitchell's claim, and viewed from that perspective, allowing her to present it in the federal court duplicates effort and squanders scarce judicial resources. Yet, the duplication complained of is part and parcel of the congressional determination that racial discrimination claims in employment are important enough to warrant independent and overlapping federal remedies. And they are also important enough to warrant de novo review of administrative rulings on employment discrimination. Some of this effort may be unnecessary, but the courts should not use the doctrine of res judicata to prune away what they view as redundancies in this scheme without close attention to the congressional intention. We should be particularly reluctant to do so where the plaintiff has never received a formal hearing on her complaint and only limited judicial review. In this situation, I believe that the availability of a federal cause of action acts as a necessary safeguard, and I therefore dissent.
 
 
 
 *
 Of the Eastern District of New York, sitting by designation
 
 
 [1]
 The New York State Division of Human Rights is an administrative agency vested by statute with plenary adjudicatory powers. The general powers and duties of the State Division are outlined in § 295 of the Human Rights Law, N.Y. Exec. Law § 295 (McKinney 1972 and Supp.1976). The State Division, created in response to the need for a "programmatic enforcement of the anti-discrimination laws," is granted broad authority by the state legislature to eliminate specified "unlawful discriminatory practices." Gaynor v. Rockefeller, 15 N.Y.2d 120, 132, 256 N.Y.S.2d 584, 592, 204 N.E.2d 627, 633 (1965)
 
 
 [2]
 The complaint filed by Ms. Mitchell alleged that she was denied "equal terms, conditions and privileges of employment" because of her race and color
 
 
 [3]
 The "determination and order after investigation" states in pertinent part:
 After investigation, the Division of Human Rights has determined that there is no probable cause to believe that the respondents have engaged or are engaging in the unlawful discriminatory practice complained of.
 The respondents submitted documentation that controverted substantively the allegations in the complaint.
 The documentation included correspondence which depicted a difficulty of the complainant to adjust to the regimens of the position complained about.
 The conferences attended by the respondents and the complainant was marked by bona fide offers made by respondents to settle the differences since the complainant had stated that she did desire to return to her former position. The complainant had on both occasions asked for time to consider these offers but never instructed the Regional Office or the Field Representative assigned what disposition would be taken by her.
 The documentation compiled and the oral testimony taken indicate that the complainant was dismissed for reasons other than those complained about.
 Upon the foregoing, the complaint is ordered dismissed and the file is closed.
 
 
 [4]
 The Human Rights Appeal Board is an adjudicatory authority within the Executive Department, independent of the State Division. The scope of the Appeal Board's review is limited to determining whether the order of the State Division is:
 a. in conformity with the constitution and the laws of the state and the United States;
 b. within the division's statutory jurisdiction or authority;
 c. made in accordance with procedures required by law or established by appropriate rules or regulations of the division;
 d. supported by substantial evidence on the whole record; or
 e. not arbitrary, capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
 N.Y. Exec. Law § 297-a(7) (McKinney 1972).
 
 
 [5]
 Section 1981 of Title 42, United States Code, provides:
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
 
 
 [6]
 Section 297 also provides that, if the complainant's objections to a proposed conciliation agreement are baseless "or that noticing the complaint for hearing would be otherwise undesirable," the State Division "in its unreviewable discretion," may dismiss the complaint on the ground of "administrative convenience." N.Y. Exec. Law § 297(3)(c) (McKinney 1972). See note 10 infra
 
 
 [7]
 In both a Rule 56 motion for summary judgment and the agency's determination of probable cause, matters outside the complaint are considered. Indeed, the State Division's regulations provide for the issuance of subpoenas and subpoenas duces tecum on the State Division's own initiative or "at the instance of any party who appears without attorney . . . ." Such subpoenas may be issued "at any stage of any investigation or proceeding pending before the (State Division)" including, implicitly, the probable cause determination. 9 NYCRR 465.10 (1975)
 
 
 [8]
 Mayo v. Hopeman Lumber & Manufacturing Co., supra, is instructive on this point. There, the complainant, an apprentice carpenter, filed a complaint with the State Division, alleging that respondent's decision to terminate his employment constituted a discriminatory practice. The State Division dismissed for lack of probable cause, but the Appeal Board reversed. The Appellate Division affirmed the Appeal Board and in doing so, commented on the conference between the parties and the Regional Director:
 Verbatim statements were not recorded in the minutes, and it is clear that the minutes are fragmentary with much omitted. The parties, officers of parties, and some other persons having knowledge of the dispute were present and they recounted their views to the Director. The Director also accepted unsworn written statements of absent persons and the minutes of the Carpenters' Joint Apprenticeship Committee meeting were received by him.
 
 
 [33]
 A.D.2d at 312, 307 N.Y.S.2d at 693. The appellate court went on to state:
 It must be borne in mind that the Division, through its Director, received information concerning the complaint by holding the conference and by investigation, but there has been no hearing, and complainant has had no opportunity to present his case in a formal manner. For the Division to dismiss his complaint under such circumstances it must appear virtually that as a matter of law the complaint lacks merit. The record, such as it is, will not permit such a conclusion. A question of fact is presented requiring a hearing, and the Appeal Board was correct in determining that the action of the Division through its Regional Director was arbitrary and capricious (see Matter of Koster v. Holz, 3 N.Y.2d 639, 171 N.Y.S.2d 65, 148 N.E.2d 287; 1 N.Y.Jur., Administrative Law, §§ 181-191).
 Id. at 313, 307 N.Y.S.2d at 694-95.
 
 
 [9]
 The appellant also argues that the decision of the State Division received a "rubber stamp" affirmance from the Appeal Board and the Appellate Division. She contends that the Appeal Board, for example, cannot reverse a State Division order unless it is "arbitrary and capricious," and that the scope of review in the Appellate Division is scarcely any broader. See Mize v. State Division of Human Rights, 33 N.Y.2d 53, 57, 349 N.Y.S.2d 364, 367-68, 304 N.E.2d 231 (1973)
 This argument misses the mark in several respects. In the first place, the scope of review in the Appellate Division under § 298 of the Human Rights Law is at least as broad as that afforded by a special proceeding pursuant to article 78 of the New York Civil Practice Law and Rule, which combines elements of common law mandamus and certiorari. Holland v. Edwards, 282 App.Div. 353, 358, 122 N.Y.S.2d 721, 725 (1st Dep't.1953), aff'd, 307 N.Y. 38, 119 N.E.2d 581 (1954). Courts in this circuit have not hesitated to give res judicata effect to article 78 proceedings in the state courts. See Taylor v. New York City Transit Authority, 433 F.2d 665, 668, 670-71 (2d Cir. 1970); Roode v. Michaelian, 373 F.Supp. 53 (S.D.N.Y.1974); Kabelka v. City of New York, 353 F.Supp. 7 (S.D.N.Y.1973). Indeed, the appeal from the Appeal Board determination was brought pursuant to both § 298 of the Human Rights Law and article 78 of the Civil Practice Law and Rules.
 Second, as pointed out, the issue before the State Division was whether the complaint lacked merit as a matter of law. The Appellate Division, in reviewing dismissals for lack of probable cause, has consistently applied this standard to the State Division's determinations. E.g., State Division of Human Rights v. Bond, Schoeneck & King, 52 A.D.2d 1045, 384 N.Y.S.2d 568 (4th Dep't.1976); Pember v. New York State Division of Human Rights, supra. Where the State Division fails to adhere to this standard, the Appellate Division has not hesitated to reverse and remand for a hearing or further investigation. E. g., Mayo v. Hopeman Lumber, supra; State Division of Human Rights v. Mecca Kendall Corp., 53 A.D.2d 201, 385 N.Y.S.2d 665 (4th Dep't.1976); State Division of Human Rights v. Board of Education, Olean Public Schools, supra. See also Burns v. Sabena Belgian World Airlines, 42 A.D.2d 347, 347 N.Y.S.2d 958 (1st Dep't.1973). There is, therefore, little reason to believe that the review afforded appellant was inadequate to correct errors made by the State Division in dismissing the complaint.
 
 
 [10]
 The Human Rights Law does not indicate whether a determination of no probable cause will bar further proceedings involving the same facts in the state courts; nor does it characterize such an order of dismissal as "final." On the other hand, § 297(9) provides that where a complaint is dismissed on grounds of administrative convenience, see note 6 supra, "such person shall maintain all rights to bring suit as if no complaint had been filed." N.Y. Exec. Law § 297(9) (McKinney 1976 Supp.). Arguably, by failing to include dismissals for lack of probable cause within this proviso, the legislature intended such dismissals to be a bar to state court suits. The point remains, however, that the Appellate Division's determination unquestionably is a final one and that the finality of a no probable cause determination is unclear
 
 
 [11]
 Section 1738 of Title 28, United States Code, provides:
 The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.
 The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
 Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken. June 25, 1948, c. 646, 62 Stat. 947.
 
 
 [12]
 The so-called "deferral" provision of Title VII is contained in § 706 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(c), providing in pertinent part:
 In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law.
 According to the Congressional debate accompanying the passage of the 1964 Civil Rights Act, this section was intended "to give States . . . a reasonable opportunity to act under State law before the commencement of any Federal proceedings by individuals who alleged discrimination." 2 Schwartz, Statutory History of the United States : Civil Rights 1334 (1970) (quoting statement of Senator Hubert Humphrey), quoted in Voutsis v. Union Carbide Corp., 452 F.2d 889, 892 (2d Cir. 1971). The emphasis of deferral is not that a claimant must exhaust all possible state remedies before bringing a Title VII action, rather, it gives the state a chance to employ its own conciliatory and adjudicatory machine to resolve a claim of discrimination. Thus, if the state fails to act within sixty days, the complainant may file a charge with the Equal Employment Opportunity Commission. If the state agency dismisses the complaint, 42 U.S.C. § 2000e-5(e) requires the complainant to file his charge within 300 days after the alleged discriminatory act or within thirty days "after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier . . . ." Nothing in these provisions of the statute required the appellant to seek review of the state agency ruling. Indeed, the complaint was filed with the State Division on December 3, 1973, and the agency did not dismiss the complaint until February 11, 1974, more than two months later. As soon as the sixty day period had expired, appellant was free to file a charge with the EEOC and to pursue a § 1981 claim.
 
 
 [13]
 We do not express an opinion as to whether res judicata applies when a claimant prevails in the State Division and the respondent appeals to the Appeal Board, loses, and then appeals to the Appellate Division, where he wins a judgment reversing the State Division and dismissing the complaint. It is worth pointing out, however, that in this hypothetical the claimant did not pursue his claim to a judicial determination, rather, this was respondent's choice. Moreover, if res judicata applies in these circumstances, then deferral to state agencies pursuant to Title VII creates the risk that, by appealing any agency determination favorable to claimant, the respondent can force the claimant into the state courts and foreclose a federal action under § 1981
 In addition, our holding does not extend to the question of whether, had appellant brought a timely Title VII claim instead of one under § 1981, res judicata should apply. The cases holding that deferral to state agencies under § 2000e-5(c) does not foreclose a Title VII action in federal court, e. g., Voutsis v. Union Carbide Corp., supra; Batiste v. Furnco Construction Corp., supra; Cooper v. Phillip Morris, Inc., 464 F.2d 9 (6th Cir. 1972); International Brotherhood of Electrical Workers, Local 5 v. EEOC, 398 F.2d 248, 250 n.3 (3d Cir. 1968), cert. denied, 393 U.S. 1021, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969), did not involve resort to state judicial remedies following the agency determination.
 
 
 [14]
 Of course, the cases in this circuit espousing exhaustion of state administrative remedies prior to bringing a § 1983 claim involved discrimination or constitutional violations by officials of public agencies and the agency provided its own internal procedures for redressing such wrongs. E. g., Eisen v. Eastman, supra; Plano v. Baker, 504 F.2d 595 (2d Cir. 1974). Here, by contrast, private discrimination is alleged and the available administrative remedies involve a separate agency process that parallels an independent action in the state courts. The Supreme Court, moreover, has not stated a view "as to whether a § 1981 claim of employment discrimination is ever subject to a requirement that administrative remedies be exhausted." Johnson v. Railway Express, 421 U.S. at 456 n.3, 95 S.Ct. at 1718 n.3
 
 
 [1]
 For the text of § 1738, see footnote 11 in the majority opinion, supra
 
 
 [2]
 See H. Friendly, Federal Jurisdiction: A General View 100-02 (1973); Theis, Res Judicata in Civil Rights Act Cases: An Introduction to the Problem, 70 Nw.L.Rev. 859 (1975); McCormack, Federalism and Section 1983: Limitations on Judicial Enforcement of Constitutional Claims, Part II, 60 Va.L.Rev. 250 (1974). See also Lombard v. Board of Education, 502 F.2d 631, 636 (2d Cir. 1974), cert. denied, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975)
 
 
 [3]
 Section 7803 of Article 78 of the New York Civil Practice Law and Rules, N.Y.C.P.L.R. § 7801 et seq. (McKinney 1972) reads:
 The only questions that may be raised in a proceeding under this article are:
 
 
 [1]
 whether the body or officer failed to perform a duty enjoined upon it by law; or
 
 
 [2]
 whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or
 
 
 [3]
 whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed; or
 
 
 [4]
 whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence
 
 
 [4]
 Section 298 of the Human Rights Law, N.Y. Exec. Law § 298 (McKinney 1972) reads in part:
 Any complainant, respondent or other person aggrieved by any order of the board may obtain judicial review thereof, and the division may obtain an order of court for its enforcement and for the enforcement of any order of the commissioner which has not been appealed to the board, in a proceeding as provided in this section. . . .
 No objection that has not been urged in prior proceedings shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. Any party may move the court to remit the case to the division in the interests of justice for the purpose of adducing additional specified and material evidence and seeking findings thereon, provided he shows reasonable grounds for the failure to adduce such evidence in prior proceedings. The findings of facts on which such order is based shall be conclusive if supported by sufficient evidence on the record considered as a whole. . . .
 
 
 [5]
 Although it is true that under section 298, a party may move to cure an inadequate record, a successful motion must show "reasonable grounds for the failure to adduce . . . (the additional evidence) in prior proceedings." Even then, the state court will not conduct its own inquiry into the merits, but will "remit" the case to the State Division
 
 
 [6]
 The majority opinion points out, supra, at p. 272, note 9, that this court has previously given res judicata effect to an Article 78 proceeding. For the most part, those cases are distinguishable, since they do not raise the special policy considerations applicable in an employment racial discrimination case. See, e. g., Taylor v. New York City Transit Authority, 433 F.2d 655 (2d Cir. 1970) (res judicata applied to a procedural due process claim raised in an Article 78 proceeding). And even when these special policy considerations are absent, this court has not always applied traditional res judicata rules to Civil Rights Act cases and Article 78. See Lombard, supra (prior Article 78 proceeding in which claim of procedural due process could have been, but was not, raised does not preclude § 1983 action based on that claim)
 
 
 [7]
 For that reason, the analogy drawn by the majority opinion between the administrative proceedings here and summary judgment in a judicial proceeding is inapposite