**Walter D. KIRKLAND, Commissioner of Police of the City of Peekskill, Plaintiff,**

v.

**CITY OF PEEKSKILL, George Pataki, Individually and as Class Action Representative, William F. Williams, James Madaffari, Salvatore Prezioso and Edward Creem, Defendants.**

No. 84 Civ. 3510 (MEL).

United States District Court, S.D. New York.

Jan. 16, 1987.

Walter D. Kirkland, pro se.

Lovett & Gould, White Plains, for defendants City, Pataki, Williams, Madaffari and Creem, Jonathan Lovett, of counsel.

Killarney, Fabiani & Brody, New York City, for defendant Prezioso; John V. Fabiani, Jr., of counsel.

LASKER, District Judge.

Plaintiff Walter D. Kirkland brought this civil rights action in June 1984 alleging that the City of Peekskill, various Peekskill officials and a consultant formerly employed by the City conspired to discriminate against him on the basis of race during the course of his employment as police commissioner of Peekskill. Defendants now move for summary judgment under Fed.R.Civ.P. 56(b), or, in the alternative, for dismissal of the complaint under Fed.R. Civ.P. 12(b), on *res judicata* grounds.

In September 1983, prior to filing this action, Kirkland filed a related complaint in this court, alleging violations of 42 U.S.C. §§ 1983, 1985, 1986 and 2000e. Affirmation of Jonathan Lovett ("Lovett Affirmation"), Exhibit A. In January 1984 he filed a similar complaint with the New York State Division of Human Rights ("NYSDHR") charging that he had been discriminated against by the City and City officials because of his race. Lovett Affirmation at Exhibit B. In both the federal civil rights complaint and the NYSDHR complaint, Kirkland alleged that (1) the City had discriminated against him by inducing him to accept employment with the City of Peekskill by a false representation of salary; (2) in contrast to other City department heads he alone was required to relocate to Peekskill and was denied financial assistance in doing so; and (3) he was denied the salary raises to which he was entitled. *See* Lovett Affirmation at Exhibits A and B.

In May 1984 Kirkland filed a second complaint with the NYSDHR alleging that because of his prior discrimination complaints, he had been subjected to a retaliatory " 'campaign' of harassment." Lovett Affirmation at Exhibit C ¶ 12. This second NYSDHR complaint charged, *inter alia,* that (1) City officials were undermining Kirkland's authority in the Police Department, *id.* at ¶ 10; (2) misleading information about a prisoner's suicide was given to the local press to "embarass" Kirkland, *id.* at ¶ 11; (3) a consultant, Sal Prezioso, had been hired to investigate him, *id.* at ¶ 6;

and (4) Prezioso had made derogatory remarks about Kirkland to a prospective employer, *id.* at ¶ 7. The next month, Kirkland filed the instant civil rights action in this court, alleging violations of 42 U.S.C. §§ 1981, 1983, 1985 and 1986. (This complaint has since been amended several times). Lovett Affirmation at Exhibit D. This complaint is largely based on the same allegations of discriminatory retaliation charged in the second NYSDHR complaint just described.

In October 1984 Kirkland's first federal complaint was dismissed. *See Kirkland v. Bianco,* 595 F.Supp. 797 (S.D.N.Y.1984) (dismissing Title VII claims for failure to exhaust administrative remedies and dismissing § 1983 claims without prejudice for failure to state a claim). Kirkland then filed a third NYSDHR complaint, again charging the City and its officials with a " 'campaign' of harassment" and charging that the City and various officials had engaged in a conspiracy to deny him "the right to continuing employment." Lovett Affirmation at Exhibit E ¶¶ 2–3.

The NYSDHR conducted a two year investigation of Kirkland's three Human Rights complaints, during which an NYSDHR representative (1) received sworn statements on Kirkland's behalf, Lovett Affirmation at Exhibit F; (2) met with Kirkland and his attorney to take Kirkland's testimony concerning his allegations, *id.* at Exhibit G; (3) contacted witnesses suggested by Kirkland, *id.* at Exhibit G, p. 7; (4) received analyses of various complaints from the City and from Kirkland, *id.* at Exhibit H; (5) received from Kirkland portions of transcripts of the depositions taken in connection with his federal actions and other documents, *id.* at Exhibit I; and (6) received portions of the trial transcript from the hearing held in this court on Kirkland's 1984 application for injunctive relief. After concluding its investigation, on February 28, 1986 the NYSDHR dismissed all three of Kirkland's complaints, entering a Determination and Order After Investigation finding no probable cause to believe that the City of Peekskill and its officials

had engaged in the unlawful discriminatory practices alleged by Kirkland. *See* Lovett Affirmation at Exhibit M. The NYSDHR found that:

> A review of the selection process for the successor as police commissioner, did not reveal a pattern of discrimination against the complainant as another black was offered the position at an increase in pay, but declined it. The suicide issue appears to be one of a situation where the city officials were attempting to mitigate the negative publicity and not as a conspiracy to get even with the Complainant. In regard to the opportunity to work under Section 211 of the Retirement and Social Security Law, there appears to have been discretionary judgments made on the part of those city officials in applying said law to Mr. Kirkland and others that were not based on race and color considerations.
>
> A further review was made of the residency issue which revealed that other officials such as Mr. Kirkland had to follow such requirement [before it] had been repealed. The white that the Complaint alluded to was officially hired after said law had been repealed. A review of the hiring and pay level patterns of other departments within the respondent city's administration did not reveal a pattern of discrimination based upon race and color. An analysis of the records separately and as a whole do not support the Complainant's charges of discrimination.

*Id.* at pp. 1–2 (bracketed phrase inserted to clarify probable meaning of sentence).

Kirkland then instituted a state-court proceeding pursuant to N.Y.Civ.Prac.L. & R. 7801 (McKinney 1981) to review the NYSDHR's dismissal of his complaint. That proceeding was dismissed by judgment on August 8, 1986, Lovett Affirmation at Exhibit N, and a copy of the judgment was served by mail upon Kirkland's then attorney of record on August 11, 1986, with notice of entry, *id.* at Exhibit O. Kirkland appealed this dismissal to the Appellate Division, Second Department, and on October 16, 1986, that appeal was dismissed as untimely.

Defendants now argue that under the Supreme Court's recent decision in *University of Tennessee v. Elliott,* —— U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the NYSDHR's dismissal of Kirkland's complaints bars this court from hearing the present action under principles of *res judicata.* Kirkland, who is now representing himself, opposes the motion on the grounds that the NYSDHR's decision was arbitrary and capricious and not based on a properly conducted investigation, and that the adverse decisions rendered by the NYSDHR and the state courts were the result of conspiracy and collusion against him on the part of defendants, their attorneys, and Kirkland's former attorney. *See* Supplementary Affidavits of Walter D. Kirkland (Oct. 31, 1986 and Nov. 3, 1986). Defendants' motion is granted.

■ Under the doctrine of *res judicata* a final judgment on the merits of an action precludes the parties from relitigating claims that were or could have been raised in the original action. *See Migra v. Warren City School District Board of Education,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894, 79 L.Ed.2d 56 (1984). In *Migra,* the Supreme Court held that an adverse state-court judgment bars an unsuccessful litigant from bringing a subsequent federal-court action if the original judgment would be given preclusive effect in the state courts. *Id.* at 80–81. While the *Migra* court did not consider what preclusive effect an adverse state administrative judgment would have on a subsequent federal-court action, this question was addressed last term in *University of Tennessee v. Elliott,* —— U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). In *Elliott,* the Supreme Court considered whether a state administrative agency's determination that a discrimination claim lacked merit is entitled to preclusive effect in a federal court discrimination action. The University of Tennessee had informed Elliott, a black employee, that he would be discharged for inadequate work performance and miscon-

duct on the job. Elliott requested and received an administrative hearing, as provided for under Tennessee law, to protest his discharge, claiming that the misconduct charges against him were not a proper basis for discharge because they were motivated by racial prejudice. The administrative law judge found that the misconduct charges against Elliott were not racially motivated, and this finding was upheld on administrative appeal. Rather than seeking review of the determination in the Tennessee courts, Elliott instituted a civil rights suit in federal court based on Title VII and the Reconstruction civil rights statutes. The defendants moved for dismissal on the grounds that the administrative decision precluded the federal court from hearing the civil rights action. The District Court granted summary judgment to the defendants, and the Court of Appeals for the Sixth Circuit reversed. *Elliott,* 106 S.Ct. at 3222–3224.

The Supreme Court distinguished between Elliott's discrimination claims under Title VII of the Civil Rights Act of 1964 and those based on the Reconstruction civil rights statutes, because while

Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims,

*id.* at 3225,

[w]e ... see no reason to suppose that Congress, in enacting the Reconstruction civil rights statutes, wished to foreclose the adaptation of traditional principles of preclusion to such subsequent develop-

ments as the burgeoning use of administrative adjudication in the 20th century, *id.* at 3226. Hence the court concluded that the administrative decision did not preclude Elliott's Title VII claim, but did preclude Elliott's claims under § 1983 and others of the related civil rights statutes. Reasoning that to give preclusive effect to state administrative factfinding would both contribute to repose in litigation and promote federalism in such cases, the Court held that

when a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," *Utah Construction & Mining Co., supra,* 384 U.S. [394], at 422, 86 S.Ct. [1545], at 1560 [16 L.Ed.2d 642 (1966)] federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.

*Id.* at 3227 (footnote omitted).

■ *Elliott* teaches, then, that a state agency's resolution of factual issues adverse to the complainant will bar a federal court action brought under the Reconstruction civil rights statutes if (1) the state agency was acting in a judicial capacity; (2) the disputed issues of fact were properly before the agency and the parties were given an adequate opportunity to litigate them; and (3) the courts of the particular state would give the agency's factfinding determinations preclusive effect.[1]

---

1. The *Elliott* court uses both the term *"res judicata"* and the term "collateral estoppel" during the course of its opinion, without making clear whether the decision rests on the principles of *res judicata* ("claim preclusion") or principles of collateral estoppel ("issue preclusion"), under which a party is precluded from litigating only those matters which have been actually litigated and decided in the previous action, see *Migra,* 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1, or whether the decision is equally applicable to both doctrines. The decision, taken as a whole, however, appears to approve the extension of *res judicata* effect to administrative decisions if the requisite conditions are met, *accord Federal Savings and Loan Insurance Corp. v. Director of Revenue of Illinois Department of Revenue,* No. 86–101 (N.D.Ill., Oct. 23, 1986) [Available on

WESTLAW, DCTU database] (LEXIS, Genfed library, Courts File).

However, even if *Elliott* were to be interpreted as only giving collateral estoppel effect to administrative factfinding, dismissal would still be granted in this case, since the NYSDHR's adverse determination of the factual issues at the heart of Kirkland's discrimination allegations would prevent Kirkland from prevailing on his discrimination claims in this action, *cf. Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 479–80, 102 S.Ct. 1883, 1996, 72 L.Ed.2d 262 (1982) ("petitioner could not succeed on a Title VII claim consistently with the judgment of the NYSDHR that there is no reason to believe that he was terminated or not rehired because of age or religion").

**1230**

■ In the case at hand, all three conditions are met. First, the NYSDHR is "vested by statute with plenary adjudicatory powers," *Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 266 n. 1 (2d Cir.1977), and functions in a quasi-judicial capacity when it processes discrimination complaints, *see Silver v. Mohasco Corp.*, 94 A.D.2d 820, 462 N.Y.S.2d 917, 920 (3d Dept. 1983) (proceeding before NYSDHR was "plainly quasi-judicial in nature"), *aff'd* 62 N.Y.2d 741, 476 N.Y.S.2d 822, 465 N.E.2d 361 (1984).

■ Second, the issues of fact in this action were properly before the NYSDHR, since the NYSDHR's enabling legislation gives it authority to "receive, investigate and pass upon complaints alleging violations of [the New York Human Rights Law]," N.Y.Exec.Law § 295(6) (McKinney 1982), and the New York Human Rights Law, N.Y.Exec.Law § 296 (McKinney 1982 and Supp.1987), provides protection against discrimination "at least as broad as that afforded by the federal constitution and civil rights statutes," *Mitchell*, 553 F.2d at 269–70. In addition, the Supreme Court has concluded that the "panoply of procedures [available to complainants who come before the NYSDHR], complemented by administrative as well as judicial review, is sufficient under the Due Process Clause," and offers a full and fair opportunity to litigate discrimination complaints. *Kremer*, 456 U.S. 484, 102 S.Ct. at 1899. The fact that the NYSDHR never held a formal hearing in this case does not deprive its determination of *res judicata* effect. *See Mitchell*, 553 F.2d at 271; *Rashid v. American Electric Service Corp.*, 646 F.Supp. 251, 252 (S.D.N.Y.1986). As described above, the NYSDHR conducted a sufficiently lengthy and thorough investigation

of Kirkland's three complaints to provide Kirkland with ample opportunity to litigate his claims. Indeed, Kirkland, who was represented by counsel at the time he pursued his complaints with the NYSDHR, appears to have litigated his case vigorously.

Third, New York state courts would give *res judicata* effect to the NYSDHR's dismissal of Kirkland's discrimination charges. The New York Court of Appeals has ruled that that the doctrine of *res judicata* is applicable

> to give conclusive effect to the quasi-judicial determinations of administrative agencies, when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law. "[S]uch determinations, when final, become conclusive and binding on the courts."

*Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 499, 478 N.Y.S.2d 823, 825–26, 467 N.E.2d 487, 489–90 (1984) (citations omitted); *see also Fay v. South Colonie Central School District*, 802 F.2d 21, 28 (2d Cir.1986).[2] New York employs a transactional test for the application of *res judicata*, according to which a claim will be barred by a determination in an earlier action if both causes of action are grounded on the same gravamen or are part of the same "factual grouping," even if the later claim is brought under a different legal theory of recovery. *Smith v. Russell Sage College*, 54 N.Y.2d 185, 192–93, 445 N.Y. S.2d 68, 71, 429 N.E.2d 746 (1981); *see also Fay*, 802 F.2d at 28. Here, Kirkland's federal complaint is clearly based on the same series of events and the same allegations of discriminatory retaliation on which his second and third NYSDHR complaints were

**2.** While the Court of Appeals for this circuit has indicated uncertainty as to whether an NYSDHR finding of no probable cause is final for the purposes of *res judicata*, *Mitchell*, 553 F.2d at 273 & n. 10, the New York State Court of Appeals has since held that the very filing of a complaint with the NYSDHR, even without any action on the part of the agency, constitutes a binding election of remedies which "precludes the plaintiff from commencing an action in

court based on the same incident," *Emil v. Dewey*, 49 N.Y.2d 968, 428 N.Y.S.2d 887, 406 N.E.2d 744 (1980), unless the complaint is dismissed on the grounds of administrative convenience, *see* N.Y.Exec.Law § 297(9) (McKinney 1982). Hence, the NYSDHR's dismissal of Kirkland's complaints was final and entitled to preclusive effect. *See Spoon v. American Agriculturalist, Inc.*, 103 A.D.2d 929, 478 N.Y.S.2d 174 (3d Dept. 1984).

based. Hence, the NYSDHR's finding that Kirkland was not discriminated against by defendants and its dismissal of Kirkland's complaints would bar a New York state court action based on the same allegations, *see Spoon,* 478 N.Y.S.2d at 175, and this court must give the NYSDHR's determinations the same preclusive effect. *See Elliott,* 106 S.Ct. at 3227.

 Furthermore, although the issue was not raised by defendants, this action might well be barred under principles of *res judicata* even without considering the preclusive effect of the NYSDHR's fact-finding and dismissal. As described above, Kirkland sought review of the administrative decision in a state-court Article 78 proceeding. The Supreme Court dismissed the action and the Appellate Division dismissed Kirkland's appeal from that dismissal as untimely.

The Appellate Division's dismissal would be given *res judicata* effect in New York state courts, and hence would be entitled to the same treatment in federal courts. *See Mitchell,* 553 F.2d at 273–274; *Rashid,* 646 F.Supp. at 252. The fact that the Appellate Division dismissed on the grounds that Kirkland's appeal was untimely would not undermine its *res judicata* effect, since the New York State Court of Appeals has held that "a dismissal on [the grounds of un-timeliness] is at least sufficiently close to the merits for claim preclusion purposes to bar a second action," *Smith,* 54 N.Y.2d at 194, 445 N.Y.S.2d at 72; *see also De Crosta v. Reynolds Construction and Supply Corp.,* 41 N.Y.2d 1100, 1101, 396 N.Y.S.2d 357, 359, 364 N.E.2d 1129 (1977).

Kirkland's arguments that (1) the NYSDHR investigation was improperly conducted; (2) the NYSDHR decision was arbitrary; and (3) the defendants and his own former lawyer conspired against him to produce the adverse court decisions, even if assumed to be true for the purposes of this motion to dismiss, would not prevent the Appellate Division's decision from having *res judicata* effect, since under the principles of *res judicata,* an adverse judgment bars both claims that were previously litigated and claims which could have been litigated in the previous action but were not, *see Fay,* 802 F.2d at 28.

 Finally, it is noted that the Court of Appeals for this circuit has recently held that a prior state-court judgment in an Article 78 proceeding cannot preclude a later federal-court § 1983 suit for damages, because, since damages are largely unavailable in Article 78 proceedings, the court in the initial action did not have the power to award the full measure of relief sought in the second action, *see Giano v. Flood,* 803 F.2d 769 (2d Cir.1986); *Fay,* 802 F.2d at 29; *Davidson v. Capuano,* 792 F.2d 275 (2d Cir.1986). However, this rationale would not appear to apply in a case such as this, where the initial forum, the NYSDHR, did have the power to grant compensatory damages, *see* N.Y.Exec.Law § 297(4)(c)(iii) (McKinney 1982).

Defendants' motions are granted and the complaint is dismissed.

It is so ordered.