James **KENNEDY**, Plaintiff,

v.

**GENERAL MOTORS CORPORATION**, Defendant.

No. 84 CIV. 5259 (PKL).

United States District Court, S.D. New York.

July 7, 1987.

Aton Arbisser, New York City, for plaintiff.

Parker Auspitz Neesemann & Delehanty P.C. New York City (Kim J. Landsman, of counsel), for defendant.

### OPINION & ORDER

LEISURE, District Judge:

This is an employment discrimination case under 42 U.S.C. § 1981. Plaintiff, who is black, alleges discrimination on the basis of race. Defendant has moved pursuant to Fed.R.Civ.P. 56 for summary judgment on the ground of *res judicata.*[1]

**1.** Defendant has moved, in the alternative, for an order *in limine* that plaintiff be precluded at trial from asserting that he did not violate General Motors Plant Rule 30. In view of the Court's conclusion with respect to defendant's principal contention, it is unnecessary to address this issue.

## Factual Background

On or about January 10, 1983, plaintiff filed a complaint (the "administrative complaint") against General Motors Corporation ("GM") before the New York State Division of Human Rights (the "SDHR"). By letter dated March 1, 1984, the SDHR informed plaintiff of defendant's position with regard to the administrative complaint. Plaintiff was also informed of his rights to examine the SDHR file, which contained documents submitted by GM, and to submit additional information or documents in support of the administrative complaint. Plaintiff did not, however, submit any additional information or documents to the SDHR.

In an order dated March 23, 1984, the SDHR determined that "there is no probable cause to believe that the [defendant] engaged in the unlawful discriminatory practice complained of." *See* Defendant's Exh. AL.[2] Accordingly, the SDHR dismissed plaintiff's complaint. Plaintiff appealed the SDHR decision to the State Human Rights Appeal Board and received a notice, dated May 31, 1984, which stated that, as of June 1, 1984, it would no longer be in existence. Plaintiff did not seek judicial review of the SDHR decision in the Appellate Division of the Supreme Court of the State of New York.

After his discharge, plaintiff filed a workers' compensation claim against GM for injuries alleged to have occurred on February 26, 1982. A hearing on plaintiff's workers' compensation claim was held on August 31, 1982. By a decision filed September 8, 1982, the Workers' Compensation Board disallowed the claim. Plaintiff's application for review of that determination was subsequently denied in a Memorandum of Decision.

Appearing *pro se,* plaintiff filed his original complaint in this action (the "Complaint") on July 17, 1984. The Complaint is a form document which includes, at various points, spaces to be filled in and a choice of lines to be checked off. The Complaint states that "[t]his action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, for employment discrimination." Complaint at ¶ 1. Jurisdiction is asserted under 42 U.S.C. § 2000e–5, 42 U.S.C. §§ 1981 et seq., and 28 U.S.C. §§ 1331, 1343. *Id.* The Complaint alleges race discrimination in the termination of plaintiff's employment. *Id.* at ¶¶ 9, 10. The Complaint further states that "[i]f relief is not granted, Plaintiff will be irreparably denied rights secured by Title VII...." *Id.* at ¶ 13.

Thereafter, plaintiff retained counsel, who filed an amended complaint (the "First Amended Complaint"). The First Amended Complaint repeats the pertinent allegations of the Complaint, described above. Like the Complaint, the First Amended Complaint seeks damages and equitable relief for an alleged violation of Title VII.

After discovery, defendant moved for judgment on the pleadings or summary judgment on the grounds that plaintiff's Title VII claim was time-barred and that plaintiff could not prove racial discrimination under any other legal claim for relief. In response, plaintiff cross-moved for leave to serve a proposed amended complaint (the "Second Amended Complaint"), which omits any reliance on Title VII and asserts a claim under 42 U.S.C. § 1981. *See* Exh. 5 to Affidavit of Kim J. Landsman, Esq., sworn to on November 4, 1986 (the "Landsman Affidavit"), at 1. Plaintiff's motion for leave to further amend his complaint was granted on December 11, 1985. Exh. 4 to Landsman Affidavit. On March 20, 1986, the Court denied defendant's motion for judgment on the pleadings or summary judgment.[3] Plaintiff filed the Second Amended Complaint on May 19, 1986. Defendant served its answer to the Second

---

2. The SDHR stated that its determination was based on the following: "Investigation revealed that complainant was discharged because he violated respondent's reasonable rules and regulations. The record further reveals that complainant was treated in the same manner as other similarly situated employees."

3. Plaintiff has not argued that defendant waived the defense of *res judicata* by moving for summary judgment or judgment on the pleadings.

Amended Complaint (the "Amended Answer") on August 18, 1986. The Amended Answer contains the defense of *res judicata*. *See* ¶¶ 12–18. Defendant filed the instant motion for summary judgment on September 22, 1986.

### Waiver

Plaintiff asserts that GM has waived the defense of *res judicata* since it was not asserted in defendant's original answer. Plaintiff's Memorandum of Law at 6–8. Plaintiff relies primarily on *Evans v. Syracuse City School District*, 704 F.2d 44, 47 (2d Cir.1983), a case where defendant waited until six days before the scheduled trial date to move, pursuant to Fed.R.Civ. P. 15(a), for leave to amend its answer to assert a new defense. In the instant action, by contrast, defendant amended its answer in response to plaintiff's Second Amended Complaint. *See* Fed.R.Civ.P. 15(a) ("A party shall plead in response to an amended pleading ... within 10 days after service of the amended pleading...."). Plaintiff's Complaint and First Amended Complaint contained only a claim pursuant to Title VII. The claim under § 1981 was asserted for the first time after defendant moved for summary judgment on the Title VII claim. This fact is critical due to the Supreme Court's decision in *University of Tennesee v. Elliott*, —— U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), which sharply distinguishes Title VII and § 1981 claims for the purposes of application of the doctrine of *res judicata*.

"Although an amended complaint ordinarily supercedes the original pleading ... it does not automatically revive all of the defenses and objections that a defendant has waived in response to the original complaint." *Gilmore v. Shearson/American Express*, 811 F.2d 108, 112 (2d Cir. 1987). While Fed.R.Civ.P. 15 "does not expressly limit the defenses that can be alleged in response to an amended pleading," defenses that involve "the core issue of a party's willingness to submit a dispute to judicial resolution" are "not automatically revived by the submission of an amended complaint." *Id.* at 112. Such defenses include lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service. *Id.* A motion to compel arbitration made in response to the original complaint is also subject to this rule. *Id.*

■ In this case, defendant is not unwilling to submit the dispute to judicial resolution. Rather, defendant argues that this Court must decide the instant controversy by application of the doctrine of *res judicata*. Defendant's Memorandum of Law at 5–9. Specifically, defendant seeks to preclude litigation on the merits of plaintiff's § 1981 claim. The Court concludes that defendant has not waived the defense of *res judicata* and was entitled as a matter of right to file timely an amended answer.[4]

### Preclusion

In *Elliott*, "the Supreme Court considered whether a state administrative agency's determination that a discrimination claim lacked merit is entitled to preclusive effect in a federal court discrimination action." *Kirkland v. City of Peekskill*, 651 F.Supp. 1225, 1228 (S.D.N.Y.1987). A state administrative law judge concluded that plaintiff's discharge was not racially motivated, and this finding was upheld on administrative appeal. *Elliott*, 106 S.Ct. at

---

**4.** Plaintiff did not object to the filing of the Amended Answer and has not argued, in opposition to the instant motion, that leave of Court was required for defendant to file the Amended Answer because it was submitted more than 10 days after service of the Second Amended Complaint. *See* Fed.R.Civ.P. 15(a). This may be because plaintiff did not file the Second Amended Complaint until May 19, 1986, although he first received leave to do so on December 11, 1985. In any event, even if leave of Court was required, such permission would have been granted, on the present record, in view of plain-

tiff's lengthy delay in filing the Second Amended Complaint, which formally asserted the § 1981 claim for the first time, and plaintiff's delay in submitting a joint pretrial order. *See* Landsman Affidavit at ¶¶ 5–6. The three-month period which elapsed from the time the Second Amended Complaint was filed to the time that the Amended Answer was filed cannot, in view of all the circumstances in this case, be characterized as "undue delay." *See Evans*, 704 F.2d at 47. Moreover, only about six weeks elapsed from the *Elliott* decision, on July 7, 1986, until the filing of the Amended Answer.

3222–23. Instead of seeking judicial review of that finding in state court, Elliott brought a civil rights suit in federal court based on Title VII and the Reconstruction civil rights statutes. *Id.* "The Supreme Court distinguished between Elliott's discrimination claims under Title VII of the Civil Rights Act of 1964 and those based on the Reconstruction civil rights statutes...." *Kirkland,* 651 F.Supp. at 1229. While the Court found that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims," *Elliott,* 106 S.Ct. at 3225, it saw "no reason to suppose that Congress, in enacting the Reconstruction civil rights statutes, wished to foreclose the adaptation of traditional principles of preclusion to such subsequent developments as the burgeoning use of administrative adjudication in the 20th century," *id.* at 3226.[5] Thus, the Court held that the unreviewed administrative decision did not preclude Elliott's Title VII claim, but did preclude his claims under § 1983 and other civil rights statutes. *Id.* at 3227.

The teaching of *Elliott* was recently explained by Judge Lasker in a case similar to the instant action.

> [A] state agency's resolution of factual issues adverse to the complainant will bar a federal court action brought under the Reconstruction civil rights statutes if

(1) the state agency was acting in a judicial capacity; (2) the disputed issues of fact were properly before the agency and the parties were given an adequate opportunity to litigate them; and (3) the courts of the particular state would give the agency's factfinding determinations preclusive effect.

*Kirkland,* 651 F.Supp. at 1229.[6] *See also DeCintio v. Westchester County Medical Center,* 821 F.2d 111, 116 (2d Cir.1987).[7]

### (1) Judicial Capacity

The first of the three conditions required by *Elliott* is clearly satisfied in this case. The SDHR is "vested by statute with plenary adjudicatory powers." *Mitchell v. National Broadcasting Co.,* 553 F.2d 265, 266 n. 1 (2d Cir.1977). It "functions in a quasi-judicial capacity when it processes discrimination complaints." *Kirkland,* 651 F.Supp. at 1230 (citing *Silver v. Mohasco Corp.,* 94 A.D.2d 820, 462 N.Y.S.2d 917, 920 (App.Div.1983), *aff'd,* 62 N.Y.2d 741, 476 N.Y.S.2d 822, 465 N.E.2d 361 (1984)). *See also Mitchell,* 553 F.2d at 270 (SDHR's preliminary review described as an "adjudicatory process").

The SDHR does not make a probable cause determination until the complainant has had 'full opportunity to present on the record, though informally, his

---

5. Since the Supreme Court rejected the *Mitchell* Court's assumption that "the policy considerations underlying the treatment of state proceedings in Title VII claims are desirable in a § 1981 context," *Mitchell v. National Broadcasting Co.,* 553 F.2d 265, 275 (2d Cir.1977), plaintiff's reliance on *Mitchell* is misplaced. *See Elliott,* 106 S.Ct. at 3225–27. *See also DeCintio v. Westchester County Medical Center,* 821 F.2d 111, 118 n. 13 (2d Cir.1987).

6. As Judge Lasker noted, *Elliott* "appears to approve the extension of *res judicata* effect to administrative decisions if the requisite conditions are met," although the *Elliott* Court used "both the term '*res judicata*' and the term 'collateral estoppel' during the course of its opinion...." *Kirkland,* 651 F.Supp. at 1229 n. 1. *See also Elliott,* 106 S.Ct. at 3227 (opinion concurring in part and dissenting in part) (interpreting majority holding as precluding plaintiff's "claims" and "cause of action"). Even if *Elliott* were to interpreted as only giving collateral estoppel effect to administrative factfinding, dismissal would still be appropriate here,

since the SDHR's adverse determination of the factual issues at the heart of plaintiff's discrimination allegations would prevent plaintiff from prevailing in this action. *See Kirkland,* 651 F.Supp. at 1229 n. 1. *Cf. Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 479–80, 102 S.Ct. 1883, 1896, 72 L.Ed.2d 262 (1982). The discrimination issue "was obviously material to the SDHR proceeding and 'essential to the decision rendered therein.'" *DeCintio,* at 118 (citation omitted). Moreover, under New York law "'the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in prior action or proceeding.'" *Id.* at 117 (citation omitted). Plaintiff has not met this burden.

7. "The holding in *Elliott* as to the preclusive effect of administrative rulings specifically applied to an action brought under the first, thirteenth and fourteenth amendments and 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988 (commonly referred to as the Reconstruction Civil Rights Statutes)." *See DeCintio,* at 116 n. 9, 118 n. 13.

charges against his employer or other respondent, including the right to submit all exhibits which he wishes to present and testimony of witnesses in addition to his own testimony.' Only where the record indicates 'that there was a thorough inquiry during which the complainant was afforded a full opportunity to present her contentions,' or where a complaint 'lacks merit as a matter of law,' will an SDHR dismissal based on lack of probable cause be upheld.

*DeCintio*, at 117 (citations omitted). *See also Kremer*, 456 U.S. at 485, 102 S.Ct. at 1899. Moreover, the SDHR has the power to grant compensatory damages. *See* N.Y. Exec. Law § 297(4)(c)(iii)(McKinney 1982). *Contrast Giano v. Flood*, 803 F.2d 769, 771 (2d Cir.1986) (since damages are largely unavailable in Article 78 proceeding, later federal court suit under § 1983 not precluded).

(2) Issues of Fact Before Agency

*Elliott* also requires that the disputed issues of fact were properly before the agency and the parties were given an adequate opportunity to litigate them. In *Kirkland,* the Court found that the issues of fact had been properly before the SDHR because its enabling legislation gives it authority to "receive, investigate and pass upon complaints alleging violations" of the New York Human Rights Law, N.Y.Exec. Law § 296. 651 F.Supp. at 1230. *See* N.Y. Exec. Law § 295(6)(a) (general powers and duties of SDHR). The Human Rights Law "provides protection against discrimination 'at least as broad as that afforded by the federal constitution and civil rights statutes,'" *Kirkland,* 651 F.Supp. at 1230 (quoting *Mitchell,* 553 F.2d at 269–70). Moreover, it is clear that the crux of plaintiff's § 1981 claim—whether he was discharged on account of his race—involves

the same issue that was previously presented to the SDHR in the administrative complaint. *See Mitchell,* 553 F.2d at 270. *Cf. Kremer,* 456 U.S. at 479–80, 102 S.Ct. at 1896.

The Supreme Court has determined that the "panoply of procedures" governing the SDHR, complemented by the availability of judicial review, suffices under the Due Process Clause. *Kremer,* 456 U.S. at 483–84, 102 S.Ct. at 1898–99.[8] *See also Mitchell,* 553 F.2d at 271. "The fact that the SDHR never held a formal hearing in this case does not deprive its determination of *res judicata* effect." *Kirkland,* 651 F.Supp. at 1230 (citing *Mitchell,* 553 F.2d at 271; *Rashid v. American Electric Power Service Corp.,* 646 F.Supp. 251, 252 (S.D.N.Y. 1986)). In this case, the SDHR informed plaintiff of his rights to examine its file and to submit materials in support of his administrative complaint. *See* Defendant's Exh. AJ. Plaintiff's failure "to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy." *Kremer,* 456 U.S. at 485, 102 S.Ct. at 1899. Even if he may not "have availed himself significantly of [it]," plaintiff had an adequate opportunity to litigate his discrimination claim in the proceedings before the SDHR. *See DeCintio,* at 116.

(3) Effect of SDHR Dismissal in New York

New York state courts would accord preclusive effect to the SDHR's findings. *See Kirkland,* 651 F.Supp. at 1230. In New York, the doctrine of claim preclusion

> give[s] conclusive effect to the quasi-judicial determinations of administrative agencies, when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law.

---

**8.** New York's abolition of the State Human Rights Appeal Board in June 1984 does not alter this conclusion. Currently, the SDHR must conduct a public hearing if its investigation discloses probable cause and efforts at conciliation are unsuccessful. N.Y.Exec.Law § 297(4)(a) (McKinney Supp.1987). Judicial review in the Appellate Division of the Supreme Court remains available. N.Y.Civ.Prac. L. & R.

§§ 7801–06 (McKinney 1981). Moreover, § 298 of the New York Human Rights Law was amended to permit claimants, such as plaintiff herein, whose appeals were pending before the State Human Rights Appeal Board at the time of its abolition, to institute a timely proceeding for judicial review in the Appellate Division. N.Y. Exec.Law § 298 (McKinney 1982 & Supp.1987). *See* Defendant's Exh. AM.

'[S]uch determinations, when final, become conclusive and binding on the courts.'

*Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 499, 478 N.Y.S.2d 823, 825–26, 467 N.E.2d 487, 489–90 (1984) (citations omitted). Under New York's transactional approach, "a claim will be barred by a determination in an earlier action if both causes of action are grounded on the same gravamen or are part of the same 'factual grouping,' even if the later claim is brought under a different legal theory of recovery." *Kirkland*, 651 F.Supp. at 1230 (quoting *Smith v. Russell Sage College*, 54 N.Y.2d 185, 192–93, 445 N.Y.S.2d 68, 71, 429 N.E.2d 746, 749 (1981); citing *Fay v. South Colonie Central School District*, 802 F.2d 21, 28 (2d Cir.1986)). In this case, plaintiff's Second Amended Complaint is based on the same series of events and the same allegations of discrimination which were involved in his administrative complaint. Therefore, the SDHR's finding of "no probable cause" and its dismissal of plaintiff's complaint would bar a New York state action based upon the same allegations, and this Court must give the state agency's determination the same preclusive effect. *See Elliott*, 106 S.Ct. at 3226–27; *Kirkland*, 651- F.Supp. at 1231.[9]

Accordingly, defendant's motion is granted and plaintiff's complaint is hereby dismissed.

SO ORDERED.

---

**9.** In *Kirkland*, Judge Lasker noted that the Court of Appeals for the Second Circuit "has indicated uncertainty as to whether an [SDHR] finding of no probable cause is final for the purposes of *res judicata*...." *Kirkland*, 651 F.Supp. at 1230 n. 2 (citing *Mitchell*, 553 F.2d at 273 & n. 10). Judge Lasker pointed out, however, that

the New York State Court of Appeals has since held that the very filing of a complaint with the [SDHR], even without any action on the part of the agency, constitutes a binding election of remedies which 'precludes the plaintiff from commencing an action in court based on the same incident,' *Emil v. Dewey*,

49 N.Y.2d 968, 428 N.Y.S.2d 887, 406 N.E.2d 744 (1980), unless the complaint is dismissed on the grounds of administrative convenience, *see* N.Y.Exec.Law § 297(9) (McKinney 1982). Hence, the [SDHR's] dismissal of [plaintiff's] complaints was final and entitled to preclusive effect. *See Spoon v. American Agriculturalist, Inc.*, 103 A.D.2d 929, 478 N.Y. S.2d 174 (3d Dept.1984).

651 F.Supp. at 1230 n. 2. Recently, the Second Circuit explained that in view of *Dewey, Spoon*, and other cases, the question raised in *Mitchell* "as to the finality of an SDHR determination of no probable cause should be deemed resolved in favor of finality." *DeCintio*, at 118 n. 12.