828 F.2d 104
 44 Fair Empl.Prac.Cas. 1410,
44 Empl. Prac. Dec. P 37,361
Walter D. KIRKLAND, Appellant,
v.
CITY OF PEEKSKILL, George E. Potaki, individually and as
Class Action Representative, William F. Williams,
James Madafari, Salvatore, Prezioso and
Edward Creem, Appellees.
 No. 1073, Docket 87-7089.
 United States Court of Appeals,
Second Circuit.
 Argued May 8, 1987.
Decided Sept. 11, 1987.
 
 Morton J. Sussman, Yonkers, N.Y. (Michael H. Sussman, Sussman & Sussman, Yonkers, N.Y., of counsel), for appellant.
 Jonathan Lovett, White Plains, N.Y. (Lovett & Gould, White Plains, N.Y., of counsel), for appellees City of Peekskill, George E. Pataki, William F. Williams, James Madaffari and Edward Creem.
 John V. Fabiani, Jr., New York City (Lorraine M. Brennan, Killarney, Rein, Brody & Fabiani, of counsel), for appellee Sal J. Prezioso.
 Before OAKES, NEWMAN and PIERCE, Circuit Judges.
 OAKES, Circuit Judge:
 
 
 1
 Walter D. Kirkland, former Police Commissioner of the City of Peekskill ("the City"), appeals from a judgment of the United States District Court for the Southern District of New York, Morris E. Lasker, Judge, granting the City, various Peekskill officials, and a consultant formerly employed by the City, dismissal of Kirkland's complaint on res judicata grounds. See Kirkland v. City of Peekskill, 651 F.Supp. 1225 (S.D.N.Y.1987). Kirkland's amended complaint alleged denial of his constitutional and statutory rights, privileges and immunities in violation of the Fourteenth Amendment under 42 U.S.C. Secs. 1981, 1983, 1985 and 1986, denial of his constitutional rights under the Constitution of the State of New York, denial of rights to equal opportunity and to freedom from retaliation in violation of the Human Rights Law of the State of New York, N.Y. Exec. Law Secs. 290-301 (McKinney 1982), and libel and slander by specific acts of two of the defendants and by the conspiratorial acts of the defendant class.
 
 
 2
 Kirkland, a black, claimed that while he was Police Commissioner he was continuously subject to willful and purposeful acts of harassment, was subject to false charges regarding his work performance and duties which were designed to effectuate his discharge, and that he was wrongfully terminated and replaced by a less qualified white male. In addition, he alleged that he was treated differently from white city officials similarly situated, that he was subjected to verbal abuse which generated untrue and unfounded rumors about him, and that in carrying out his supervisory duties he was repeatedly countermanded or overruled by the Common Council, the Mayor, the City Manager and other city officials in a deliberate effort first to discriminate and then to retaliate against him. Finally, he alleged that the defendants engaged in a pattern and practice of regular harassment designed to force his involuntary resignation or discharge.
 
 
 3
 The district court held that Kirkland's federal court action was precluded as res judicata on two grounds: first, that under University of Tennessee v. Elliott, --- U.S. ----, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the determination of the New York State Division of Human Rights (NYSDHR) that Kirkland's discrimination claim lacked merit barred the action, 651 F.Supp. at 1228-31, and second, that state court review of the adverse NYSDHR determination was also a bar, 651 F.Supp. at 1231, under Mitchell v. National Broadcasting Co., 553 F.2d 265, 273-74 (2d Cir.1977); see also Fay v. South Colonie Central School District, 802 F.2d 21, 28 (2d Cir.1986). See generally Migra v. Warren City School District Board of Education, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984). We affirm.
 
 
 4
 The procedural history of this case must be recounted in order to understand the issues. In September 1983 Kirkland had filed an earlier complaint in United States District Court under 42 U.S.C. Secs. 1983, 1985, 1986, and 2000e et seq. (Title VII) alleging that the City of Peekskill and various city officials had discriminated against him because of his race and color by inducing him to accept employment with a false representation of salary, by requiring him alone among city department heads to relocate to Peekskill, denying him financial assistance for the move, and by denying him certain salary increases to which he was entitled. In January 1984 he filed a similar complaint with the NYSDHR. Then, in May 1984, he filed a second complaint with the NYSDHR alleging that because of his prior complaints City officials had launched a retaliatory campaign of harassment against him--undermining his authority in the department, embarrassing and discrediting him by giving misleading information to the press about a prisoner's suicide while in custody, and hiring a consultant named as a defendant in this case, Sal Prezioso, to investigate him. Against Prezioso, Kirkland alleged the conveyance of false and derogatory information to a prospective employer.
 
 
 5
 In June 1984 Kirkland filed the present civil rights action in United States District Court for the Southern District of New York based on 42 U.S.C. Secs. 1981, 1983, 1985, and 1986. His amended complaint set forth substantially the same allegations of discrimination and retaliation as did his second NYSDHR complaint.
 
 
 6
 In October 1984 Judge Lasker dismissed without prejudice Kirkland's first federal complaint, filed in September 1983, on the basis that he had failed to exhaust the EEOC and state administrative remedies which are prerequisite to a Title VII action, and that his section 1983 complaints failed to state a claim on which relief could be granted. See Kirkland v. Bianco, 595 F.Supp. 797 (S.D.N.Y.1984). Kirkland then filed a third NYSDHR complaint, also in October 1984, again charging that the City and its officials had carried on a campaign of harassment against him and had engaged in a conspiracy to deny him the right to continuing employment. In the course of investigating Kirkland's three complaints, the Division received sworn statements on Kirkland's behalf, met with Kirkland and his attorney to take his testimony concerning his allegations, contacted witnesses suggested by him, reviewed explanations provided by the City and by Kirkland of certain specific complaints, and examined portions of transcripts of depositions taken in connection with his federal actions and portions of the trial transcript from the hearing held in federal district court on his section 1984 application for injunctive relief.
 
 
 7
 On February 28, 1986, the NYSDHR entered a Determination and Order After Investigation dismissing all three of Kirkland's complaints on grounds that the investigation had found no probable cause to believe that the City of Peekskill and its officials had engaged in the unlawful discriminatory practices which he had alleged. The Determination, after noting that Kirkland's charges related to employment discrimination because of "race, color, and retaliation " (emphasis added), stated:
 
 
 8
 A review of the selection process for the successor as police commissioner, did not reveal a pattern of discrimination against the complainant as another black was offered the position at an increase in pay, but declined it. The suicide issue appears to be one of a situation where the city officials were attempting to mitigate the negative publicity and not as a conspiracy to get even with the Complainant. In regard to the opportunity to work under Section 211 of the Retirement and Social Security Law, there appears to have been discretionary judgments made on the part of those city officials in applying said law to both Mr. Kirkland and others that were not based on race and color considerations.
 
 
 9
 A further review was made of the residency issue which revealed that other officials such as Mr. Kirkland had to follow such requirement [before it] had been repealed. The white that the Complainant alluded to was officially hired in his certified capacity after said law had been repealed. A review of the hiring and pay level patterns of other departments within the respondent city's administration did not reveal a pattern of discrimination based upon race and color. An analysis of the records separately and as a whole do not support the Complainant's charges of discrimination.
 
 
 10
 Lovett affirmation, Exhibit M at pp. 1-2 (bracketed phrase inserted to clarify probable meaning of sentence).
 
 
 11
 Kirkland then instituted an Article 78 proceeding under N.Y. Civ. Prac. L. & R. Secs. 7801-7806 (McKinney 1981) to review the NYSDHR's dismissal of his complaints. The Supreme Court of the State of New York dismissed Kirkland's petition for review on August 8, 1986. Kirkland appealed to the Appellate Division, Second Department; on October 16, 1986, the Appellate Division dismissed Kirkland's appeal as untimely.
 
 
 12
 The appeal before us concerns the disposition of Kirkland's second federal complaint, filed in June 1984, which Judge Lasker dismissed on grounds of res judicata in a January 1987 decision, Kirkland v. City of Peekskill, 651 F.Supp. 1225 (S.D.N.Y.1987).
 
 
 13
 On appeal, Kirkland reminds us that federal courts must extend full faith and credit to state court judgments only when the state courts themselves would do so, see Allen v. McCurry, 449 U.S. 90, 96, 101 S.Ct. 411, 415-16, 66 L.Ed.2d 308 (1980); Migra, 465 U.S. at 83, 104 S.Ct. at 897, and he argues that it is only where state courts would give preclusive effect to state administrative agency determinations and where this would not offend federal due process guarantees that federal courts should do likewise. Kremer v. Chemical Construction Corp., 456 U.S. 461, 479-83, 102 S.Ct. 1883, 1896-99, 72 L.Ed.2d 262 (1982); University of Tennessee v. Elliott, supra. See Fay v. South Colonie Central School District, 802 F.2d at 28-29. Kirkland then suggests that Kremer and Mitchell have misstated the actual NYSDHR procedures, so that Division determinations improperly have been endowed with preclusive effect, and further argues that not only has there been a shift in New York State law as to the NYSDHR, see New York State Division of Human Rights v. New York State Drug Abuse Control Commission, 59 A.D.2d 332, 399 N.Y.S.2d 541 (4th Dep't 1977) (hereinafter Drug Abuse Control Commission ), but that the New York Court of Appeals has shortened the reach of both claim and issue preclusion law generally in Ryan v. New York Telephone Co., 62 N.Y.2d 494, 467 N.E.2d 487, 478 N.Y.S.2d 823 (1984). We take up each contention in turn, assuming familiarity with Allen and Migra, supra, as well as with Kremer and Mitchell, and pointing out, as did the district court, see 651 F.Supp. at 1229, that Elliott teaches that a state agency's resolution of factual issues adverse to the complainant will bar a federal court action brought under the Reconstruction Era civil rights statutes (42 U.S.C. Secs. 1981, 1983, 1985, and 1986 in this case) if (1) the state agency was acting in a judicial capacity, (2) the disputed issues of fact were properly before the agency and the parties were given an adequate opportunity to litigate them, see also United States v. Utah Construction & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966), and (3) the courts of that particular state would give the agency's factfinding determinations preclusive effect.
 
 
 14
 We commence then with Kirkland's suggestion that the district court's analysis of Kremer and Mitchell is wrong because both rested on a misapprehension of NYSDHR procedures. Kirkland contends that Kremer did not consider how New York State's own courts regard NYSDHR administrative proceedings and neglected to ask whether NYSDHR probable cause procedures meet the standard for a "full and fair opportunity to litigate." Mitchell, Kirkland argues, also misstated NYSDHR procedures in reporting that the NYSDHR is required to give full credence to the complainant's version of events for purposes of the probable cause determination and to weigh disputed facts in favor of the complainant as in a summary judgment proceeding. In Kirkland's own case, the NYSDHR, without the benefit of proceedings in which the complainant could confront and cross-examine hostile witnesses, embarked on a factfinding enterprise and produced an investigative report that evaluated all the differing accounts of what had transpired.
 
 
 15
 Kirkland argues that Drug Abuse Control Commission, supra, changed the New York law on which Mitchell had relied by overruling Mayo v. Hopeman Lumber & Mfg. Co., 33 A.D.2d 310, 307 N.Y.S.2d 691 (4th Dep't), motion for leave to appeal dismissed, 26 N.Y.2d 962, 259 N.E.2d 477, 311 N.Y.S.2d 5 (1970). Mayo had held that if and when question(s) of material fact arose in the course of an NYSDHR complaint investigation, the Division must conduct a public hearing. On reconsideration of Mayo, Drug Abuse Control Commission held that under section 297(2) of the Executive Law the Commissioner is required to determine promptly whether there is a reasonable basis for sustaining a complaint based upon complainant's own evidence, but that the appeal board is without authority to reverse a determination of no probable cause and to order a public hearing under section 297(4)(a) "provided that the Commissioner's determination is rationally supported by the record before him ...," 59 A.D.2d at 336-37, 399 N.Y.S.2d at 544. Thus, Kirkland urges, since current New York law permits the NYSDHR Commissioner to determine probable cause and to decide disputed issues of fact without benefit of a public hearing, a complainant before the Division has no opportunity to litigate sufficient to give preclusive effect to the administrative action.
 
 
 16
 On consideration, we note that the Supreme Court, in deciding Kremer, quoted from Drug Abuse Control Commission in stating that "before this determination of probable cause is made, the claimant is entitled to a 'full opportunity to present on the record, though informally, his charges against his employer or other respondent, including the right to submit all exhibits which he wishes to present and testimony of witnesses in addition to his own testimony.' " 456 U.S. at 483, 102 S.Ct. at 1898-99. The Court then went on to note that an NYSDHR complainant "also is entitled to an opportunity 'to rebut evidence submitted by or obtained from the respondent' ... 9 NYCRR Sec. 465.6 (1977) ... [and h]e may have an attorney assist him and may ask the division to issue subpoenaes, NYCRR Sec. 465.12(c) (1977)." Id. (quoting Drug Abuse Control Commission ). Kremer again quoted Drug Abuse Control Commission to the effect that "[a] public hearing must also be held if the Human Rights Appeal Board finds 'there has not been a full investigation and opportunity for the complainant to present his contentions and evidence, with a full record.' " 456 U.S. at 484, 102 S.Ct. at 1899. Finally, the Court cited Drug Abuse Control Commission yet a third time, for the proposition that, under New York law, before a determination of no probable cause can be made the NYSDHR must "make a full investigation, wherein the complainant has full opportunity to present his evidence, under oath if he so requests." 456 U.S. at 485, 102 S.Ct. at 1899.
 
 
 17
 While it is true that Mitchell was decided before Drug Abuse Control Commission, Kremer, in specifically and explicitly recognizing the holding of Drug Abuse Control Commission, quite defeats Kirkland's argument that the Supreme Court was unaware of the actual NYSDHR procedures. He is left with the argument that, to the extent that an NYSDHR investigator makes judgments about the credibility of witnesses without benefit of cross-examination, New York law would question whether the complainant has been afforded an adjudicatory hearing sufficient to make res judicata applicable. In Ryan v. New York Telephone Co., supra, the court held that "the doctrines of res judicata and collateral estoppel are applicable to give conclusive effect to the quasi-judicial determinations of administrative agencies ... when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law." 62 N.Y.2d at 499, 467 N.E.2d at 489-90, 478 N.Y.S.2d at 825-26.
 
 
 18
 In Mitchell we compared the Division's investigation of a complaint and determination of probable cause to a motion under the federal rules of procedure for summary judgment or for dismissal for failure to state a claim, 553 F.2d at 270-71, although we assumed there that the complaint had to be considered " 'giving full credence ... to the complainant's version of the events.' " 553 F.2d at 271 (quoting State Division of Human Rights v. Buffalo Auto Glass Co., 42 A.D.2d 678, 344 N.Y.S.2d 374, 375 (4th Dep't 1973)). This is probably no longer true under the holding of Drug Abuse Control Commission, but that does not necessarily help Kirkland, for the analogy retains force. Indeed, Ryan suggests that the New York courts would give preclusive effect to an unreviewed Division finding of no probable cause.
 
 
 19
 Ryan places the burden of demonstrating identity and decisiveness of issue upon the proponent of collateral estoppel, but sets the burden of establishing the absence of a full and fair opportunity to litigate that issue upon the opponent, 62 N.Y.2d at 501-02, 467 N.E.2d at 491, 478 N.Y.S.2d at 827. If in this case we apply that burden to Kirkland, we cannot say that he has shown that he was denied a full and fair opportunity to litigate his claims before the NYSDHR. As we have noted above, during its investigation of Kirkland's three complaints the NYSDHR received sworn statements on his behalf, took testimony from Kirkland while he was accompanied by counsel, contacted a number of his suggested witnesses, and received portions of depositions taken in connection with Kirkland's federal actions and portions of the trial transcript from the hearing held in federal district court on his application for injunctive relief, all before dismissing his complaints for lack of probable cause.
 
 
 20
 Moreover, once a complaint has been filed with the NYSDHR, under New York's Executive Law Sec. 297(9) (McKinney 1982) there may be a state statutory bar to judicial actions, unless the Division has dismissed the complaint "on the grounds of administrative convenience." See Emil v. Dewey, 49 N.Y.2d 968, 406 N.E.2d 744, 428 N.Y.S.2d 887 (1980). Accordingly, even if, in the general case, Ryan forestalls a defense of res judicata unless there has been an adversarial administrative hearing, an NYSDHR proceeding is accorded greater preclusive effect.
 
 
 21
 But our decision does not stand solely on our view of New York State law with respect to the finality of administrative proceedings, or, more specifically, on the NYSDHR finding of no probable cause. As Judge Lasker noted, Kirkland had pursued state judicial remedies as well, to wit, review of the NYSDHR decision in state court Article 78 proceedings. On motion by the City of Peekskill, the Supreme Court dismissed his action for failure to name the City as a party even though it had appeared and had actively litigated in the NYSDHR proceedings. Kirkland's appeal of that dismissal to the Appellate Division was itself dismissed as untimely. The question is, then, whether the New York state courts would give the Appellate Division's dismissal res judicata effect. In Smith v. Russell Sage College, 54 N.Y.2d 185, 429 N.E.2d 746, 445 N.Y.S.2d 68 (1981), the New York Court of Appeals, quoting Professor Corbin to the effect that " 'legal rights and duties are incapable of definition without reference to societal remedies,' " 54 N.Y.2d at 194, 429 N.E.2d at 750, 445 N.Y.S.2d at 72, held that dismissal on statute of frauds and statute of limitations grounds was at least sufficiently close to a decision on the merits to bar a second action. See also De Crosta v. Reynolds Construction and Supply Corp., 41 N.Y.2d 1100, 1101, 364 N.E.2d 1129, 1130, 396 N.Y.S.2d 357, 359 (1977) (judgment dismissing claim on basis of a statute of limitations is on the merits, thereby requiring preclusion) (citing Restatement, Judgments Sec. 49, comment a). In our case there is no question but that Kirkland was required, when he commenced his Article 78 proceeding, to make service on the Division and all parties before it within sixty days of the date upon which the Division's order finding no probable cause was mailed to him. N.Y. Exec. Law Sec. 298 (McKinney Supp.1987), N.Y.Civ.Prac.L. & R. Sec. 1001(a) (McKinney 1976); Uniform Rules for the New York State Trial Courts Sec. 202.57(a) (McKinney 1987). The City was not timely added as a party defendant to this action. The dismissal on the basis that the proceeding was "clearly commenced at a period of time beyond the sixty day limit mandated by law," Westchester County Index No. 8118 (July 24, 1986), and the dismissal in the Appellate Division for failure to comply with yet another statutory period of limitations, N.Y.Civ.Prac.L. & R. Sec. 5513(a) (McKinney 1978) (notice of appeal required to be served and filed within thirty days of service upon appellant of judgment with notice of entry), were in effect dismissals on the merits.
 
 
 22
 Nor is the line of cases in our court which holds that federal civil rights actions are not barred by determinations in Article 78 proceedings, e.g., Davidson v. Capuano, 792 F.2d 275 (2d Cir.1986), applicable. The rationale of these cases is that damage relief is not readily available in an Article 78 proceeding. In Kirkland's case, however, the Article 78 proceeding was commenced to review a determination of the NYSDHR, an agency with power to award both back pay and compensatory damages under N.Y. Exec. Law Sec. 297(4)(c)(ii, iii). While we have been unable to locate any New York case law dealing with this issue, we are reasonably satisfied that, if confronted with the question, the New York courts would similarly distinguish Article 78 review of NYSDHR findings from that of other agencies' that are not empowered to award damages.
 
 
 23
 The question remains whether appellant's complaints to the NYSDHR included the same issues as those before the federal court. As Judge Lasker stated, 651 F.Supp. at 1230, "New York employs a transactional test for the application of res judicata, according to which a claim will be barred by a determination in an earlier action if both causes of action are grounded on the same gravamen or are part of the same 'factual grouping,' even if the later claim is brought under a different legal theory of recovery," citing Smith v. Russell Sage College, 54 N.Y.2d at 192-93, 429 N.E.2d at 749-50, 445 N.Y.S.2d at 71; see also Fay v. South Colonie Central School District, 802 F.2d at 28. We agree with the judge that Kirkland's federal complaint is clearly based on the same series of events and the same allegations of discriminatory retaliation which formed the basis of his second and third NYSDHR complaints. While Kirkland argues that his claim that he was terminated from his job because of retaliatory animus was not before the NYSDHR, his second complaint (in January 1984) clearly raises the general retaliation claim in Paragraph Twelve ("It is my belief that respondent, through the Mayor, members of the Common Council, etc., have stepped up their 'campaign' of harassment ... to retaliate against me for filing my original charges."). See Spoon v. American Agriculturist, Inc., 103 A.D.2d 929, 478 N.Y.S.2d 174 (3d Dep't 1984). The Division's complaint abstract summarized Kirkland's retaliation charge, and as we noted above, the Determination and Order of the NYSDHR dismissed his complaints concerning "unlawful discriminatory practice[§ relating to] employment because of race, color and retaliation " (emphasis added).
 
 
 24
 Judgment affirmed.